STATE of Wisconsin, Plaintiff-Respondent,

v.

Dawn M. CHAMPION, Defendant-Appellant.†

Court of Appeals

*No. 01–1894–CR. Oral argument May 31, 2002.—Decided October 31, 2002.*

2002 WI App 267

(Also reported in 654 N.W.2d 242.)

† Petition to review denied 3-13-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Trish Arreazola* of *Sedor & Hoag, S.C.*, Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kathleen M. Ptacek*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Kathleen M. Ptacek*.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Dawn M. Champion appeals an order denying her motion for sentence modification. Champion was sentenced under truth-in-sentencing.[1] Champion argues that events relating to her rehabilitation while in confinement constitute a new sentencing factor, thereby making her eligible for sentence modification. We conclude that events subsequent to sentencing and relating to rehabilitation do

---

[1] The term "truth-in-sentencing" is shorthand for the sentencing revisions enacted in 1998 that are applicable to felonies committed on or after December 31, 1999. *See* 1997 Wis. Act 283, § 419, creating WIS. STAT. § 973.01. The term "truth-in-sentencing" does not, however, appear in the statute or in the enacting legislation.

not constitute a new sentencing factor, and affirm the circuit court.

### *Background*

¶ 2. Champion pled guilty to the crime of causing great bodily harm by the operation of a vehicle while under the influence of an intoxicant, contrary to Wis. Stat. § 940.25(1)(a) (1997–98).[2] She was sentenced under truth-in-sentencing. Champion received a six-year sentence composed of three years of confinement and three years of extended supervision. At the sentencing hearing, the trial court expressed the hope that the sentence imposed included enough confinement time to allow Champion to receive treatment for her alcohol and drug abuse issues.

¶ 3. After about fourteen months of confinement, Champion moved to modify the confinement portion of her sentence from three years to two years. Champion presented evidence that she would soon complete all of the programming available to her while in prison. Champion argued that she had met the rehabilitation objective of the original sentence in less time than anticipated by the court, and that her quick completion of rehabilitation programs presented a new sentencing factor. The circuit court denied the motion, stating that rehabilitation is not a new factor as a matter of law.

### *Discussion*

¶ 4. The law governing sentence modification based on a "new factor" is well settled. A defendant seeking modification based on a new factor must show

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

(1) that the new factor exists and (2) that the new factor justifies modification of the sentence. *See State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). A "new factor" is

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). In addition, "a 'new factor' must be an event or development which frustrates the purpose of the original sentence." *State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989). "New factors" must be proved by clear and convincing evidence. *Franklin*, 148 Wis. 2d at 8–9. "Whether a set of facts is a 'new factor' is a question of law which we review without deference to the trial court. Whether a new factor warrants a modification of sentence rests within the trial court's discretion." *Michels*, 150 Wis. 2d at 97 (citations omitted).

¶ 5. Champion contends that her early completion of all available rehabilitation programs constitutes a new factor. Champion reasons that (1) because her sentencing court's main concern was her alcohol and drug addiction, (2) because her sentencing court was unaware that she would complete all of the programming available in prison well before the end of her sentence, and (3) because this development frustrates the purpose of her original sentence, this court should conclude that Champion's quick rehabilitation meets the new factor test.

¶ 6. Champion acknowledges that, prior to truth-in-sentencing, her rehabilitation argument would have failed. This concession is appropriate. A number of cases have held that post-sentencing rehabilitation does not constitute a new factor.[3] Champion correctly points out, however, that each of those cases was predicated on the existence of parole and the determination that an inmate's rehabilitation was an issue best addressed by the parole board. *See State v. Kluck*, 210 Wis. 2d 1, 7–8, 563 N.W.2d 468 (1997); *see also State v. Scaccio*, 2000 WI App 265, ¶ 15, 240 Wis. 2d 95, 622 N.W.2d 449. According to Champion, the absence of parole should cause this court to reconsider the limitations imposed prior to truth-in-sentencing with respect to using rehabilitation as a new sentencing factor. We disagree. We need not determine whether we *should* expand the common law as suggested by Champion because we agree with the State that Champion's proposal contravenes legislative intent behind truth-in-sentencing.[4]

¶ 7. Under truth-in-sentencing, every inmate must serve a bifurcated sentence of confinement fol-

[3] *See Jones (Hollis) v. State*, 70 Wis. 2d 62, 72, 233 N.W.2d 441 (1975); *State v. Wuensch*, 69 Wis. 2d 467, 477–78, 230 N.W.2d 665 (1975); *State v. Scaccio*, 2000 WI App 265, ¶ 15, 240 Wis. 2d 95, 622 N.W.2d 449; *State v. Ambrose*, 181 Wis. 2d 234, 240, 510 N.W.2d 758 (Ct. App. 1993); *State v. Kaster*, 148 Wis. 2d 789, 804, 436 N.W.2d 891 (Ct. App. 1989); *State v. Prince*, 147 Wis. 2d 134, 136–37, 432 N.W.2d 646 (Ct. App. 1988); *State v. Krueger*, 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984).

[4] The State argues that *State v. Kluck*, 210 Wis. 2d 1, 563 N.W.2d 468 (1997), controls this case. In *Kluck*, the court held that rehabilitation did not constitute a new factor for defendants sentenced to jail even though such defendants are not eligible for parole. *Id.* at 8. We acknowledge that *Kluck* contains language supporting the State's position, but we do not think that *Kluck* controls the issue before us. In any event, we need

lowed by a term of extended supervision. *See* Michael B. Brennan & Donald V. Latorraca, *Truth-in-Sentencing Comes to Wisconsin,* 73 WIS. LAW., No. 5, May 2000, at 14–17. Truth-in-sentencing abolished both parole and confinement reductions for "good time." WIS. STAT. § 973.01(4) and (6).[5] With limited exceptions, § 973.01

---

not address *Kluck* because of our conclusion that legislative intent precludes consideration of Champion's proposed change to common law.

[5] WISCONSIN STAT. § 973.01 reads, in relevant part:

(1) BIFURCATED SENTENCE REQUIRED. Except as provided in sub. (3), whenever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, the court shall impose a bifurcated sentence that consists of a term of confinement in prison followed by a term of extended supervision under s. 302.113.

. . . .

(4) NO GOOD TIME; EXTENSION OR REDUCTION OF TERM OF IMPRISONMENT. A person sentenced to a bifurcated sentence under sub. (1) shall serve the term of confinement in prison portion of the sentence without reduction for good behavior. The term of confinement in prison portion is subject to extension under s. 302.113(3) and, if applicable, to reduction under s. 302.045(3m).

. . . .

(6) NO PAROLE. A person serving a bifurcated sentence imposed under sub. (1) is not eligible for release on parole.

(7) NO DISCHARGE. The department of corrections may not discharge a person who is serving a bifurcated sentence from custody, control and supervision until the person has served the entire bifurcated sentence.

(8) EXPLANATION OF SENTENCE. (a) When a court imposes a bifurcated sentence under this section, it shall explain, orally and in writing, all of the following to the person being sentenced:

1. The total length of the bifurcated sentence.

2. The amount of time the person will serve in prison under the term of confinement in prison portion of the sentence.

removed all statutory provisions that might serve to reduce an inmate's confinement based on the inmate's rehabilitation.[6] In contrast, inmates sentenced under the law in place for felonies committed before Decem-

3. The amount of time the person will spend on extended supervision, assuming that the person does not commit any act that results in the extension of the term of confinement in prison under s. 302.113(3).

4. That the amount of time the person must actually serve in prison may be extended as provided under s. 302.113(3) and that because of extensions under s. 302.113(3) the person could serve the entire bifurcated sentence in prison.

. . . .

(b) The court's explanation under par. (a) 3. of a person's potential period of extended supervision does not create a right to a minimum period of extended supervision.

[6] There are two exceptions. A court may sentence eligible inmates to the challenge incarceration program, in which inmates who successfully complete the program receive a reduced period of confinement. WIS. STAT. § 302.045(3m). In addition, inmates serving a life sentence may petition the court for release to extended supervision after reaching their extended supervision eligibility date, as imposed by the sentencing court. WIS. STAT. § 302.114. Neither of these exceptions is applicable to this case.

We note that the legislature recently enacted a limited right to seek sentence modification based on post-sentencing rehabilitation. The legislature has created a procedure, effective February 1, 2003, that permits an inmate to petition a sentencing court for sentence adjustment after serving 85% of the term of confinement for Class C to E felonies or after serving 75% of the term of confinement for Class F to I felonies. 2001 Wis. Act 109, § 1143m. One of the permissible grounds for a petition under this procedure is "[t]he inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correctional programs since he

ber 31, 1999, become parole-eligible after serving one-fourth of the imposed sentence. If such inmates are denied parole, they must wait up to a year, and in some cases longer, before being reconsidered for parole. WIS. ADMIN. CODE § PAC 1.06(2).

¶ 8. In effect, Champion asks this court to give truth-in-sentencing inmates an open-ended right to seek sentence modification whenever they believe they have a new rehabilitation argument. For example, Champion's proposal presumably permits an inmate who "unexpectedly" obtains a high school equivalency diploma or college degree to seek sentence modification. Our threshold inquiry is whether such a request is consistent with truth-in-sentencing legislation.

¶ 9. "The purpose of statutory interpretation is to discern the intent of the legislature." *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). "A statute must be construed to promote its purpose and objective." *City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis. 2d 1, 20, 539 N.W.2d 916 (Ct. App. 1995). "In construing a statute, the court must consider it 'in relation to its scope, history, context, subject matter and object to be accomplished.'" *State v. Excel Mgmt. Servs., Inc.*, 111 Wis. 2d 479, 487, 331 N.W.2d 312 (1983) (quoting *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981)).

¶ 10. The construction of a statute is a question of law which we review without deference to the circuit court. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366

---

or she was sentenced." *Id.* Prisoners may petition for such sentence modification only once "for each sentence imposed under s. 973.01." *Id.*

N.W.2d 891 (1985). We first look to the language of the statute and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). Only when statutory language is ambiguous may we examine other construction aids such as legislative history, context, and subject matter. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248. "When construing statutes we are to give them their common-sense meaning to avoid unreasonable and absurd results." *Janssen v. State Farm Mut. Auto. Ins. Co.*, 2002 WI App 72, ¶ 16, 251 Wis. 2d 660, 643 N.W.2d 857.

¶ 11. As noted above, legislative history may aid in the construction of ambiguous statutes. When viewing legislative history, it is appropriate to consider materials created by the Legislative Council. *See, e.g., Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, 188 Wis. 2d 613, 630, 524 N.W.2d 883 (1994); *State v. Mitchell*, 144 Wis. 2d 596, 614, 424 N.W.2d 698 (1988); *Hartlaub v. Coachmen Indus., Inc.*, 143 Wis. 2d 791, 800–01, 422 N.W.2d 869 (Ct. App. 1988). In addition, "[w]e may look to the [Legislative Reference] Bureau's analysis of a bill for aid when construing an ambiguous statute." *La Palio v. Estate of Habelman*, 145 Wis. 2d 228, 233, 426 N.W.2d 363 (Ct. App. 1988). Furthermore, "[d]rafting requests and statements made by sponsors of legislation prior to enactment have long been considered authoritative in construing legislative intent." *State v. Post*, 197 Wis. 2d 279, 344, 541 N.W.2d 115 (1995) (Abrahamson, J., dissenting) (footnote omitted); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.15, at 475–76 (6th ed. 2000); *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234,

248–49 & n.9, 493 N.W.2d 68 (1992) (statements by bill's sponsor comprise "legislative history" revealing purpose of statute); *Foerster, Inc. v. Atlas Metal Parts Co.*, 105 Wis. 2d 17, 24, 313 N.W.2d 60 (1981) (statements by bill's sponsor, including a press release regarding the bill, provide evidence of legislative intent).

> Of course, the interpretation by the author or sponsor of legislation is not binding on this court's interpretation of legislative enactments. Nor are comments by an agency affected by legislation or charged with implementing legislation binding on this court's interpretations of those legislative enactments. However, the interpretations of authors or sponsors or agencies may be persuasive and we will consider such information when useful and appropriate.

*State Public Defender v. Circuit Court*, 184 Wis. 2d 860, 868–69, 517 N.W.2d 144 (1994) (citations omitted).

¶ 12. The plain language of the truth-in-sentencing statutes does not answer the question presented because no statutory provision addresses the availability of sentence modification. Moreover, we conclude, in light of "new factor" case law, that truth-in-sentencing's elimination of parole creates ambiguity as to whether a circuit court may modify a sentence based on new evidence of an inmate's rehabilitation. Truth-in-sentencing's elimination of parole creates ambiguity because it could reasonably be interpreted as opening the door to judicial sentence modification to ameliorate the effect of eliminating parole. Conversely, it can be argued that the legislature's purpose in eliminating parole was to instill certainty and definiteness to confinement. Because reasonable persons can differ as to whether the statutory language prohibits judicial sentence modification based on prisoners' rehabilitation, we turn to extrinsic evidence of the legislature's intent.

¶ 13. Our review of the legislative history of 1997 Wis. Act 283 demonstrates that the legislature intended something inconsistent with Champion's proposal. That is, the legislature intended that truth-in-sentencing create certainty as to the duration of confinement at the time a sentence is imposed, something fundamentally inconsistent with the open-ended availability of sentence modification based on post-sentencing factors relating to rehabilitation.

¶ 14. Two Legislative Council staff memorandums describing the truth-in-sentencing legislation, dated June 4, 1997, and May 4, 1998, both state that persons sentenced under truth-in-sentencing "must serve 100% of the term of confinement in [the] prison portion of the sentence before serving the term of community supervision portion of the sentence." Wisconsin Legislative Council Staff Memorandum, *Analysis of 1997 Assembly Bill 351,* at 4 (June 4, 1997); Wisconsin Legislative Council Staff Memorandum, *Analysis of Senate Substitute Amendment 1, as Affected by Senate Amendment 3, to 1997 Assembly Bill 351,* at 4 (May 4, 1998) (available in Legislative Council's drafting notes to 1997 A.B. 351). In addition, the May 4, 1998, memorandum states that persons sentenced under truth-in-sentencing "must serve the time of confinement in prison *without reduction in time for good behavior.*" May 4, 1998, memorandum, at 4.

¶ 15. Moreover, the Legislative Reference Bureau's analysis attached to the bill that proposed truth-in-sentencing provides that prisoners must complete the confinement portion of their sentence before they are released on extended supervision. 1997 A.B. 351, *Analysis by the Legislative Reference Bureau.* The bureau's analysis uses the term "community supervision" instead of the current "extended supervision." *Id.*

Assembly Substitute Amendment 1 to 1997 A.B. 351 substituted "extended supervision" for "community supervision" as a non-substantive amendment. Notably, a drafter's note from the bureau to the representative sponsoring the amendment regarding the change from "community supervision" to "extended supervision" states: "I understand that you prefer the phrase 'extended supervision' as a way of promoting the idea of continued supervision after the completion of [a] definite period of confinement in prison." Drafter's Note from Legislative Reference Bureau re: LRBs0162/1dn by Jefren E. Olsen, Legislative Attorney, at 1.

¶ 16. In addition, testimony by two sponsoring representatives is consistent with other legislative history. Testifying before the Assembly Criminal Justice & Corrections Committee on May 8, 1997, Representative Scott Walker referred to the truth-in-sentencing bill as adding "certainty in sentencing," and stated that inmates will be less prone to recidivism when they are "incarcerated for the full length of their sentences." Representative Tom Sykora testified before the same committee on the same day: "When criminals are sentenced to 20 years they will serve 20 years—not a minute less . . . . Citizens expect Wisconsin to monitor and control criminals after they have completed 100% of their prison term." Additionally, Representative Sykora stated, "[criminals] deserve a 'true', 'complete', and 'un-wavering' sentence from a judge who is accountable to the people." *Truth-in-Sentencing: Testimony on A.B. 351 before the Assembly Criminal Justice & Corrections Comm.*, 1997 Reg. Sess., May 8, 1997 (testimony of Representatives Scott Walker and Tom Sykora, available in Legislative Council's drafting notes to 1997 A.B. 351).

¶ 17. Accordingly, we conclude that the legislature, with the limited statutory exceptions noted above, intended that truth-in-sentencing inmates serve every day of the confinement term imposed. Regardless whether Champion's proposed expansion of "new factor" law is good or bad policy, it must fail because it would seriously undermine the legislature's intent to create certainty in the length of confinement at the time of sentencing. It is not reasonable that the legislature would intend to provide both the defendant and the public with certainty regarding confinement and then permit the courts to undo that certainty with the change in sentence modification law proposed by Champion. At the same time, we stress that this opinion should not be read as suggesting the legislature has undone "new factor" case law. Nothing in this opinion affects a defendant's right to seek sentence modification under existing "new factor" law.

*By the Court.*—Order affirmed.