STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter C. RAMUTA, Defendant-Appellant.†

Court of Appeals

*No. 02–1431–CR. Submitted on briefs February 4, 2003.—
Decided March 4, 2003.*

2003 WI App 80

(Also reported in 661 N.W.2d 483.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Peter M. Koneazny*, assistant state public defender, and *Richard D. Martin*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sarah K. Larson*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Peter C. Ramuta appeals from a judgment entered on his no-contest pleas convicting him of eight serious crimes: six counts of robbery with threat of force, *see* WIS. STAT. § 943.32(1)(b); one count of first-degree recklessly endangering safety, *see* WIS. STAT. § 941.30(1); and one count of fleeing an officer, *see* WIS. STAT. § 346.04(3). He also appeals the trial court's order denying his motion for postconviction relief.

¶ 2. The trial court sentenced Ramuta, who was then forty-one years old, on each of the robbery counts to seven years of imprisonment, with an initial confinement of five years, and two years of extended supervision. These sentences were consecutive to each other, but the sentence on the first count was made concurrent to a sentence Ramuta was then serving. The trial court sentenced Ramuta to ten years of imprisonment on the recklessly-endangering-safety count, with an initial confinement of five years, and five years of extended supervision. This sentence was made consecutive to the others. Finally, the trial court sentenced Ramuta to two and one-half years of imprisonment on the fleeing-an-officer count, with an initial confinement of twenty months, and ten months of extended supervision. This last sentence was made to run concurrent with the sentence on the recklessly-endangering-safety count. Ramuta's total time of initial confinement is thirty-five years.

788

¶ 3. Ramuta was later sentenced by a circuit court in Waukesha County to thirty years of initial confinement in connection with another robbery spree. The Waukesha sentences were made consecutive to the Milwaukee sentences, and Ramuta contends that the sentences and his less-than-average life expectancy caused by his morbid obesity are new factors warranting modification of his Milwaukee sentences. He also argues that the Milwaukee sentences were unduly harsh and that the trial court erroneously exercised its sentencing discretion. We affirm.

## I.

¶ 4. Ramuta committed the Milwaukee robberies over a two-week period in November of 2000. On November 1, he held up a bank by giving a teller a note that said he had a gun. On November 5, he held up a motel and told the victim from whom he took the money that he had the gun. Also on November 5, he held up another motel and threatened the clerk by saying that he had a gun. On November 6, 10, and 13 he again held up banks by giving tellers a note that said he had a gun. None of the victims ever saw a gun that Ramuta claimed he had, and he later told police that he only pretended to have it.

¶ 5. The fleeing and endangering-safety charges stem from when Julia Cole, a Milwaukee police officer, saw a man whom she later learned was Ramuta sitting in a pickup truck that had been connected with at least some of the robberies. She went over to him, and told him not to leave because other officers wanted to speak to him. She was reaching into the truck when he took off, dragging her some twenty yards. Other officers chased Ramuta for what the criminal complaint alleges was approximately twenty minutes before he was

stopped by spike sticks that punctured his tires. The criminal complaint also alleges that an officer with Cole shot at Ramuta as he was dragging Cole with his truck, and, when she finally fell free of the truck, she, too, fired at Ramuta as he sped away.

¶ 6. Ramuta committed the Waukesha robberies in October and November of 2000: October 11 (a bank), 23 (a bank), 29 (a motel), 30 (a bank), and November 5 (a motel). In each case, the victims said that Ramuta told them, either orally or in a note, that he had a gun. One of the victims said that she saw Ramuta holding a large revolver. Ramuta claimed it was only a wrench. The sentencing court in Waukesha said that it believed the victim, and, also, noted that Ramuta wore disguising clothing to make his identification "less likely." Unlike the situation in Milwaukee, the Waukesha crimes were charged as armed robberies. Two of the charges were dismissed as a result of a plea bargain. Ramuta blamed his spree on what his brief on appeal calls a "cocaine binge."

## II.

¶ 7. As noted, Ramuta makes two assertions of trial-court error. First, he contends that the Waukesha sentences and his obesity are new factors that warrant modification of the Milwaukee sentences. Second, Ramuta claims that the trial court erroneously exercised its sentencing discretion. We consider his arguments in turn.

A. *Alleged New Factors.*

¶ 8. The law appropriately recognizes that sentences may be based on what is unknowingly incomplete information, and, if they are, that there should be

some mechanism to correct a resulting injustice. Thus, if after sentencing it turns out that there was something that would have been important to the sentencing court but was either unknown or unknowingly overlooked, the court may resentence the defendant to take the new matter into account. *State v. Macemon*, 113 Wis. 2d 662, 668, 335 N.W.2d 402, 406 (1983). The hurdle, however, is fairly high: the new factor must be "highly relevant" to the sentence so that its newly revealed existence "frustrates" the court's sentencing intent. *State v. Michels*, 150 Wis. 2d 94, 98–99, 441 N.W.2d 278, 280 (Ct. App. 1989). A defendant must prove by "clear and convincing evidence" that what he wants the sentencing court to consider is a "new factor." *State v. Franklin*, 148 Wis. 2d 1, 9, 434 N.W.2d 609, 611 (1989).

■

¶ 9. We review *de novo* whether something is a new factor. *Id.*, 148 Wis. 2d at 8, 434 N.W.2d at 611. "[W]hether the new factor justifies modification of the sentence" is, however, within the trial court's discretion. *Ibid.*

¶ 10. Our recent decision in *State v. Norton*, 2001 WI App 245, 248 Wis. 2d 162, 635 N.W.2d 656, is an excellent example of how something that happens after sentencing can be a new factor warranting sentencing modification because it frustrates what the sentencing court wanted the sentence to accomplish. Steve Norton was on probation, with a nine-month sentence hanging over his head when he stole a purse from a woman waiting for a bus. *Id.*, 2001 WI App 245 at ¶¶ 2–3, 248 Wis. 2d at 165–166, 635 N.W.2d at 658. Norton pled guilty to the purse-snatching, and Norton's probation agent told the trial court in a written report that Norton's probation would not be revoked. *Id.*, 2001 WI

App 245 at ¶ 4, 248 Wis. 2d at 166, 635 N.W.2d at 658. The agent recommended that the trial court incarcerate Norton for between two and four years so Norton could get in-prison alcohol and drug treatment. *Ibid.* Although as part of a plea bargain with Norton, the prosecutor said that he would not recommend any specific sentence, the prosecutor suggested that Norton be locked up for thirty months. *Ibid.* Norton's lawyer also suggested that Norton be sent to prison so he could " 'dry out and get drugs out of his system.' " *Ibid.*

¶ 11. The trial court sentenced Norton to incarceration for forty-two months, and directed that the sentence be " 'consecutive to any other sentence.' " *Id.*, 2001 WI App 245 at ¶ 5, 248 Wis. 2d at 166, 635 N.W.2d at 658–659. Six weeks later, Norton's probation agent suggested to Norton that he voluntarily submit to the revocation of his probation and told him that he would serve the nine-month stayed sentence concurrently with the forty-month sentence imposed for the purse-snatching. *Id.*, 2001 WI App 245 at ¶ 5, 248 Wis. 2d at 166, 635 N.W.2d at 659. Norton agreed, and his probation was revoked. *Ibid.* The plan misfired, however, because Norton's forty-two month sentence was, as we have seen, made " 'consecutive to any other sentence.' " *Id.*, 2001 WI App 245 at ¶ 5, 248 Wis. 2d at 166, 635 N.W.2d at 658–659. Norton claimed that this was a new factor that warranted modification of the sentence for the purse-snatching, and we agreed. *Id.*, 2001 WI App 245 at ¶¶ 7–16, 248 Wis. 2d at 167–171, 635 N.W.2d at 659–661. We explained:

> Although we agree with the State that, in general, revocation of probation in another case does not ordinarily present a new factor, the specific facts involved in this case require an exception to the general rule. It is clear from the sentencing transcript that everyone

understood that Norton's probation would not be revoked at the time of sentencing, or subsequent to sentencing, as a result of the felony theft. Instead, the probation agent intended to use an alternative to revocation as a consequence for committing another crime while on probation. Therefore, Norton would not be exposed to the stayed nine-month sentence from the misdemeanor theft.

*Id.*, 2001 WI App 245 at ¶ 10, 248 Wis. 2d at 168, 635 N.W.2d at 659. The situation here is entirely different and is akin to the situation to which *Norton* alluded: namely, where a defendant claims that a later sentence following a probation revocation is a "new factor."

¶ 12. As we have seen, Ramuta was arrested after a several-week robbery rampage, and then only after he tried to elude capture, injuring an officer (which the trial court noted at the sentencing hearing "almost killed her") in a high-speed and dangerous chase at the start of which two officers fired their guns. At sentencing, the trial court considered the appropriate factors: the nature of the crimes, the defendant's character, and the need to protect the public, *State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631, 640 (1993), and sent Ramuta to prison for, as we have seen, an initial confinement of thirty-five years.

¶ 13. The trial court recognized that all of Ramuta's crimes were "extremely aggravating in their cumulation," and had "significant impact" on the victims that would "affect the rest of their lives." The trial court also perceived that Ramuta was a person who, in "[d]ecision, after decision, after decision," had steered his life toward crime, and that all attempts at rehabilitation had failed. Ramuta had even committed a robbery in Douglas County, Wisconsin while he was on probation for a Minnesota robbery. The trial court did

recognize, however, that there was an apparent hiatus in Ramuta's criminal record, from 1982 to 1990, when the robberies started again.

¶ 14. Ramuta was sentenced to three years in prison for the Douglas County robbery, but immediately after his parole in January of 1993 Ramuta committed several drug crimes for which he was sentenced to prison for five years. Again, Ramuta was paroled, but that parole was also revoked. As one of the victims of Ramuta's latest crime spree reflected to the writer of the presentence report when told of Ramuta's record: "Some people just don't learn."

¶ 15. During the sentencing hearing, the trial court assessed Ramuta's character and rehabilitative potential:

> I can't think of a more abominable history of undesirable behavior patterns. Mr. Ramuta time and time again has had opportunities to conform his conduct to that of a law abiding citizen. Time and again he has had opportunities to know that he has difficulties in conforming his conduct. Time and again he has had opportunities to know that there are consequences for his conduct, time and again opportunities to work on his rehabilitation. None of that has been successful.

The trial court called Ramuta's history of crime "mind boggling," and concluded that he was "extremely dangerous," and had to be removed from society for a long time, noting that the "only positive[ ]" aspects of Ramuta's life that he saw were Ramuta's "G.E.D." (a high-school-graduation equivalence) and his having "admitted to the offenses and [being] cooperative with the police after he was finally apprehended."

¶ 16. The trial court recognized that Ramuta would serve his initial confinement "without parole eligibility":

[T]here now is truth [in] sentencing [so] the Court can actually protect the community for an extensive period of time and know how old Mr. Ramuta is going to be when he can finally be released from prison. Old enough that he will not be able to terrorize the community as he has done over this period of time as represented by his extensive record just in these matters alone that are before the Court, much less with his record of criminal conduct over an extensive period of time.

The trial court emphasized that "confinement is absolutely necessary to protect the public from Mr. Ramuta."

¶ 17. Ramuta seizes upon the trial court's comment at sentencing, quoted above, that the "Court can actually protect the community for an extensive period of time and know how old Mr. Ramuta is going to be when he can finally be released from prison" as evidencing an intent that Ramuta be released from prison while still alive, and also points out that the Waukesha sentences (and also Ramuta's ill health) would make that impossible. We do not read the Milwaukee court's comments that expansively.

¶ 18. Ramuta was sentenced for the Milwaukee crimes in July of 2001. Sentencing for the Waukesha robberies was not until January of 2002. As the trial court noted in its May 3, 2002, written decision denying Ramuta's motion for sentence modification, although it did not mention the Waukesha matters during its explanation of why it was imposing thirty-five years of initial confinement, it "was apprised multiple times throughout the sentencing proceeding that the defendant had charges pending in Waukesha County." The trial court further opined in its written decision that the sentences imposed by the circuit court in Waukesha

County did not "frustrate the purpose of this court's sentences, which was punishment, deterrence, and the absolute need for community protection from this type of activity." It added:

> The defendant appeared before this court with fourteen prior convictions stemming from seven different counties and commencing in 1982.[1] His record is atrocious, and the court gave considerable weight to the need to protect the community and to the defendant's inability to conform his conduct in the community. The court could easily have sentenced him to the maximum fifteen years in prison for each offense as the Waukesha county court ultimately did, but it factored his age into the weighing process and imposed less than one half of what it could have imposed. The court intended that the defendant remain in prison virtually for the remainder of his life and continue in supervision until a very old age. Consecutive sentences were imposed to emphasize that each separate crime, each of which involved a separate decision on the part of the defendant, had a separate impact on the defendant's life.

¶ 19. As can be seen from the trial court's extensive remarks, both at the sentencing hearing and in its written decision, the trial court did not, as Ramuta argues on appeal, intend to fix a specific age at which Ramuta would be released from confinement; indeed, the trial court knew that a court in Waukesha County would have another crack at protecting the community from Ramuta. That court could, in the reasoned exercise of its discretion, impose consecutive sentences for the crimes Ramuta committed in that county. *See* WIS. STAT. § 973.15(2)(a) (sentencing court may "impose as

---

[1] The trial court included in this number the five Waukesha County robberies, for which Ramuta had not yet been sentenced as of July of 2002.

many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously"). Indeed, the Waukesha court noted that although it had "no idea what's going to happen on those Milwaukee County sentences," it did not envision that the Waukesha sentences would result in a modification of the Milwaukee sentences so as to permit Ramuta to survive beyond his period of initial confinement:

> I have no idea what's going to happen on those Milwaukee County sentences, whether they'll remain or if they'll be overturned or not, but I must look at what I believe to be a fair and just sentence given what you've done here and given the person that's in front of me and the need to protect the public.

> And if that means that you never get out of prison, that's a decision that you have made. You have chosen cocaine as what will rule your life, and we do not need people like that in our community.

The Waukesha court then imposed consecutive sentences, with ten years of initial confinement on each of the three charges to which Ramuta plead guilty—a total initial confinement of thirty years.

¶ 20. Ramuta has not demonstrated by clear and convincing evidence that either the Waukesha sentencing was unknown or overlooked, or that the sentences imposed by the court in Waukesha frustrated the intent of the trial court's sentencing scheme under review here. The Waukesha sentences are not new factors any more than would be, as *Norton* pointed out, sentences later imposed following a revocation of probation. *Norton*, 2001 WI App 245 at ¶ 10, 248 Wis. 2d at 168, 635 N.W.2d at 659 ("revocation of probation in another case does not ordinarily present a new factor").

797

¶ 21. Further, Ramuta's obesity-related health problems and his resulting shorter-than-normal life expectancy are also not new factors. *See Michels*, 150 Wis. 2d at 99–100, 441 N.W.2d at 280–281 (defendant's health and its post-sentence worsening not new factors). Ramuta not only knew about his condition when he appeared before the trial court in Milwaukee, but, contrary to his contention, the trial court's sentencing comments do not envision either its expectation or desire that Ramuta would actually survive his confinement; the trial court merely wanted to assure, as it explained in its written decision denying Ramuta's motion for postconviction relief, that Ramuta, if released, would no longer be able to terrorize the community:

> The court was fully aware that the defendant would be age 76 at the end of initial confinement and age 90 at the end of extended supervision. The court specifically intended the defendant to be too old to terrorize the community before he would ever be released, and it specifically noted that previous long periods of confinement were ineffective to provide deterrence.

(Trial court's references to the sentencing transcript omitted.) Ramuta's obesity is not a "new factor."

B. *Sentencing Discretion.*

¶ 22. Ramuta complains that the cumulative terms of initial confinement—thirty-five years, until he turns seventy-six—are excessive. He claims that the trial court did not adequately explain why the sentences for all but one of his crimes should be, to use Ramuta's word, "stacked." We disagree.

¶ 23. As noted, sentencing is in the trial court's discretion. The burden on a defendant to show an erroneous exercise of discretion is heavy; the trial court's sentence is presumptively reasonable. *State v. Gallion*, 2002 WI App 265, ¶¶ 26–27, 258 Wis. 2d 473, 492–493, 654 N.W.2d 446, 455–456 ("Sentencing courts are 'presumed to have acted reasonably, and the defendant can only rebut the presumption by showing an unreasonable or unjustifiable basis for the sentence in the record.' ") (quoted source omitted). *See also Echols*, 175 Wis. 2d at 682, 499 N.W.2d at 640 ("This court is reluctant to interfere with a trial court's sentence because the trial court has a great advantage in considering the relevant factors and the demeanor of the defendant."). As we have seen, the trial court considered and explained at great length why it was sentencing Ramuta to thirty-five years of initial confinement.

¶ 24. Ramuta contends that given his age and health, the thirty-five years amounts to, in effect, a life sentence. That may be true. But it was certainly within the trial court's discretion to see that as essential to the public's protection. As noted, the legislature has specifically permitted trial courts to "stack" sentences by authorizing courts to "impose as many sentences as there are convictions." Wis. Stat. § 973.15(2)(a). "[W]hether to impose consecutive, as opposed to concurrent, sentences is, like all other sentencing decisions, committed to the trial court's discretion." *State v. Johnson*, 178 Wis. 2d 42, 52, 503 N.W.2d 575, 578 (Ct. App. 1993).

¶ 25. Although we recognize that trial courts should impose " 'the minimum amount of custody' "

consistent with the appropriate sentencing factors, *State v. Hall*, 2002 WI App 108, ¶ 8, 255 Wis. 2d 662, 671, 648 N.W.2d 41, 45 (quoted source omitted), "minimum" does not mean "exiguously minimal," that is, insufficient to accomplish the goals of the criminal justice system—each sentence must navigate the fine line between what is clearly too much time behind bars and what may not be enough. Without an elaborate system of sentencing grids, like there is in the federal system, no appellate-court-imposed tuner can ever modulate with exacting precision the exercise of sentencing discretion. *See Gallion*, 2002 WI App 265 at ¶ 9, 258 Wis. 2d at 481–482, 654 N.W.2d at 450. The trial court here, unlike the trial court in *Hall*, 2002 WI App 108 at ¶ 12, 255 Wis. 2d at 674, 648 N.W.2d at 46, explained its rationale at great length and with full and careful exposition: it put "on the record the relevant and material factors" that informed its decision; it did not rely on any improper factors; and it did not give "too much weight" to "one factor [in] the face of other contravening considerations." *Id.*, 2002 WI App 108 at ¶ 9, 255 Wis. 2d at 671–672, 648 N.W.2d at 45 (internal quotation marks omitted). It also recognized specifically that it was sentencing Ramuta under the truth-in-sentencing law, where the thirty-five years, with *de minimis* exceptions not material here, meant that Ramuta would spend at least thirty-five years in prison, provided he lived that long.[2]

---

[2] Under WIS. STAT. § 973.195, effective February 1, 2003, a prisoner may, after he or she serves either eighty-five percent or seventy-five percent of his or her sentence, petition the circuit court for an adjustment of that sentence.

¶ 26. The trial court did not erroneously exercise its sentencing discretion. Further, in light of all the reasons given by the trial court as to why it believed Ramuta's sentence was necessary, we cannot say that thirty-five years of initial confinement is beyond the pale of what a civilized community would view as reasonable. *See Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975).[3]

---

[3] Ramuta also argues that the truth-in-sentencing law requires heightened appellate scrutiny over trial court sentencing decisions. He also, however, recognizes that this argument was considered and rejected in *State v. Gallion*, 2002 WI App 265, ¶¶ 5–14, 258 Wis. 2d 473, 479–484, 654 N.W.2d 446, 449–451. On February 19, 2003, the supreme court granted review in *Gallion*. Although this was not mentioned by *Gallion*, 2001 Wis. Act 109, § 1135, as sent to the governor, would have added the following to the end of WIS. STAT. § 973.017(10):

> In any appeal from a court's sentencing decision, the appellate court may reverse the sentencing decision if it determines that the sentencing court erroneously exercised its discretion in making the sentencing decision or there is not substantial evidence in the record to support the sentencing decision.

The governor, however, partially vetoed the proposed § 973.017(10) to delete that sentence. He explained in his veto message:

> I am partially vetoing this provision because it would give the appellate court broader authority over trial court decisions. Appellate courts currently refrain from interference with trial court discretion in imposing sentences. The trial court had the opportunity to observe the witnesses, victims and the defendant, placing the trial court in the best position to pronounce an appropriate sentence. Such a dramatic shift in the standard of review should be undertaken only after thorough review by authorities in appellate law and practice.

We agree.

*By the Court.*—Judgment and order affirmed.