STATE of Wisconsin, Plaintiff-Respondent,

v.

James D. CROCHIERE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–1809–CR. Oral argument January 13, 2004.—Decided June 16, 2004.*

2004 WI 78

(Also reported in 681 N.W.2d 524.)

59

For the defendant-appellant-petitioner there were briefs and oral argument by *Steven P. Weiss,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sarah K. Larson,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Walter Dickey, David E. Schultz* and *Michael E. Smith,* Madison, on behalf of the University of Wisconsin Law School, and oral argument by *Michael E. Smith.*

¶ 1. PATIENCE D. ROGGENSACK, J.   James D. Crochiere seeks review of an unpublished court of appeals decision affirming a Marathon County Circuit Court order, denying Crochiere's motion for sentence modification. Crochiere argues that the circuit court should have considered his prison classification, his rehabilitative progress and his child support obligations as new factors that require sentence modification. While acknowledging that these facts may have been insufficient for sentence modification of an inmate serving an indeterminate sentence, Crochiere claims

that "new factor" jurisprudence must be changed for those sentenced under Truth-in-Sentencing I. He asserts that the courts should exercise their inherent power to do so.

¶ 2. We reaffirm that circuit courts have inherent authority to modify sentences on the basis of a new factor. Additionally, we continue to employ existing "new factor" jurisprudence for TIS-I sentences, while noting there may be additional new factors unique to TIS-I that we have not previously identified. However, we conclude, as did the court of appeals, that Crochiere has presented no information that constitutes a new factor supportive of sentence modification and that the circuit court appropriately exercised its discretion when it identified and applied the correct law in denying his motion. Therefore, we affirm the court of appeals.

## I. BACKGROUND

¶ 3. Crochiere pled no contest to reckless endangerment, operating a motor vehicle while intoxicated, third offense, and battery to a prisoner. The first two charges arose from an incident in November 2000 when Crochiere was stopped for speeding. The officer believed Crochiere was intoxicated and returned to his squad car to determine what additional information might be available on Crochiere. When Crochiere began to rev the engine of his truck, the officer told him to turn it off. Because he did not do so, the officer returned to Crochiere's vehicle and reached into it in an attempt to remove the keys from the ignition. Instead of permitting the officer to take the keys, Crochiere pressed on the accelerator and began to drive away. The officer's arm was stuck in the steering wheel area and as a result, Crochiere dragged the officer for some distance before the officer was able to free himself and fall to the

ground. Crochiere was apprehended after he drove his truck into a ditch. The circuit court, Judge Patrick M. Brady presiding, sentenced him to three years of initial confinement and five years of extended supervision for the reckless endangerment conviction.[1]

¶ 4.  After serving approximately eighteen months, Crochiere moved to modify his sentence. He alleged that his classification by the Department of Corrections as a minimum security prisoner, his approval to do off-ground maintenance work for the Department of Natural Resources and his rehabilitative progress while imprisoned are new factors warranting sentence modification. He also asked the circuit court to consider that he is paid only 24 cents per hour for his work, when he could return to his former job where he would earn ten dollars per hour, thereby improving his ability to make child support and restitution payments. Crochiere contends that because TIS eliminated parole, "new factor" sentence modification jurisprudence should be changed to permit consideration of those circumstances formerly taken into account by the parole board. The circuit court denied his motion; the court of appeals affirmed; and we accepted Crochiere's petition for review.

## II. DISCUSSION

### A. Impact of Truth-in-Sentencing

¶ 5.  On December 31, 1999, the effect of sentencing on the amount of time a convicted defendant actually serves in prison changed dramatically, as 1997 Wis. Act 283, commonly referred to as Truth-in-Sentencing I (TIS-I), became effective. This legislation

---

[1] He received lesser terms for the other two convictions, which ran concurrently, so that the sentence for reckless endangerment controlled his time in confinement.

was the first of two truth-in-sentencing acts. The second, 2001 Wis. Act 109 or TIS-II, became effective February 1, 2003, and modified TIS-I. *See State v. Cole*, 2003 WI 59, ¶ 4, 262 Wis. 2d 167, 663 N.W.2d 700. Crochiere was sentenced under TIS-I. He has not argued that any aspect of TIS-II is at issue in this appeal.

¶ 6.  Prior to TIS-I, Wisconsin used indeterminate sentencing, whereby a convicted defendant was sentenced to serve up to a stated number of years. Generally, an inmate was eligible for parole after serving the greater of six months or one-quarter of the sentence. Wis. Stat. § 304.06(1)(b) (1999–2000); Michael B. Brennan & Donald V. Latorraca, *Truth-in-Sentencing Comes to Wisconsin*, Wis. Law., May 2000, at 14 [hereinafter *TIS Comes to Wisconsin*]. An inmate's time in confinement could be reduced due to his or her good behavior. Wis. Stat. § 302.43 (1999–2000). The parole commission decided when an eligible inmate would be released on parole. Wis. Stat. § 304.01, *et seq.* (1999–2000); *TIS Comes to Wisconsin, supra,* at 14.[2] Additionally, unless there were extenuating circumstances, an inmate reached his or her mandatory release date after serving two-thirds of the stated sentence.[3] Wis. Stat. § 302.11(1) (1999–2000); *TIS Comes to Wisconsin, supra,* at 14.

---

[2] *See McCleary v. State*, 49 Wis. 2d 263, 288–89 n.4, 182 N.W.2d 512 (1971), where Justice Heffernan opined that indeterminate sentencing, as imposed by Wisconsin courts, was not truly indeterminate because the public generally was not aware that "the actual term of incarceration is a matter of legislative prerogative to be exercised through the probation and parole agents."

[3] Pursuant to Wis. Stat. § 302.11(1m) and (1z) (1999–2000), certain inmates serving life terms were not subject to the mandatory release provisions of § 302.11(1).

¶ 7. TIS-I eliminated indeterminate sentencing and established determinate sentencing whereby a convicted defendant serves each day of the sentence imposed. Wis. Stat. § 973.01(4) and (6) (2001–02);[4] *see TIS Comes to Wisconsin, supra,* at 14. Under TIS-I, all felony sentences except life imprisonment are bifurcated, with at least one year of confinement in prison followed by a term of extended supervision in the community. Sections 973.01(1) and (2)(b).[5] TIS-I eliminated reduction in confinement time based on an inmate's good behavior, and it abolished parole. Sections 973.01(4) and (6);[6] *see also TIS Comes to Wisconsin, supra,* at 17 (noting that in addition to the elimi-

---

[4] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[5] Wisconsin Stat. § 973.01(1) provides:

BIFURCATED SENTENCE REQUIRED. Except [for crimes that are punishable by life sentences], whenever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, the court shall impose a bifurcated sentence that consists of a term of confinement in prison followed by a term of extended supervision under s. 302.113.

Wisconsin Stat. § 973.01(2)(b) states in relevant part:

*Imprisonment portion of bifurcated sentence.* The portion of the bifurcated sentence that imposes a term of confinement in prison may not be less than one year, subject to any minimum sentence prescribed for the felony . . . .

[6] Wisconsin Stat. § 973.01(4) states in relevant part:

NO GOOD TIME; EXTENSION OR REDUCTION OF TERM OF IMPRISONMENT. A person sentenced to a bifurcated sentence under sub. (1) shall serve the term of confinement in prison portion of the sentence without reduction for good behavior . . . .

Wisconsin Stat. § 973.01(6) states:

NO PAROLE. A person serving a bifurcated sentence imposed under sub. (1) is not eligible for release on parole.

nation of "good time," TIS-I provides that " 'bad time' in the form of extra days in confinement before release to [extended supervision]" can be assessed).

¶ 8. A related change brought about by TIS-I was to increase the role of the judicial branch in sentencing. Prior to TIS-I, sentencing was a responsibility shared by all three branches of government: the legislature, in setting the maximum penalties for crimes; the courts, in imposing indeterminate terms on individual convicted defendants; and the executive branch, through the parole commission, in deciding how much of the term imposed an inmate actually would serve. *State v. Gallion*, 2004 WI 42, ¶ 28, 270 Wis. 2d 535, 678 N.W.2d 197. After TIS-I, where the legislature opted for more certainty in sentencing through the elimination of parole, Wis. Stat. § 973.01(6), the executive branch's participation in sentencing was significantly diminished. *Gallion*, ¶ 28. The overriding theme became certainty in sentencing: a convicted defendant sentenced to one year in confinement will serve precisely one year in prison. *See TIS Comes to Wisconsin, supra,* at 16 (explaining that TIS-I "establishes an informationally accurate system of sentencing. A sentence to one-year confinement in prison means the offender will be incarcerated for exactly 365 days before being released to a term of extended supervision")[7]. The shift away from executive branch participation in sentencing placed more responsibility on the courts because of the

---

[7] Testifying before the Assembly Criminal Justice & Corrections Committee on May 8, 1997, Representative Tom Sykora said, "When criminals are sentenced [under TIS] to 20 years they will serve 20 years—not a minute less . . . ." *State v. Champion*, 2002 WI App 267, ¶ 16, 258 Wis. 2d 781, 654 N.W.2d 242 (citing *Truth-in-Sentencing: Testimony on A.B. 351 before the Assembly Criminal Justice & Corrections Comm.,* 1997 Reg.

removal of the safety valve provided by the parole commission that once could have corrected a sentence that proved to be longer than was necessary to achieve the sentencing court's objectives.[8]

¶ 9. Crochiere bases his argument for sentence reduction, in part, on this shift away from the executive branch's participation due to the legislature's elimination of parole. He contends that this change brought about through TIS-I requires courts to examine rehabilitative progress and to conclude that since there is no longer any other way to review it, rehabilitation must become a new factor upon which a circuit court may base sentence modification. The State contends that to hold that Crochiere's conduct after incarceration is a new factor would strike at the very heart of TIS—certainty in sentencing. It would give courts the discretion to modify sentences based on post-incarceration conduct of inmates, which is the same discretion the legislature took from the executive branch by enacting

Sess., May 8, 1997 (testimony of Representatives Scott Walker and Tom Sykora, available in Legislative Council's drafting notes to 1997 A.B. 351)).

[8] Many cases have addressed facts that were held to be within the scope of a parole hearing. *See, e.g., State v. Kluck,* 210 Wis. 2d 1, 7–8, 563 N.W.2d 468 (1997) (explaining that the courts view rehabilitation as information "more properly considered by the parole system"); *State v. Wuensch,* 69 Wis. 2d 467, 478, 230 N.W.2d 665 (1975) (stating that whether a "defendant's change in attitude and progress or rehabilitation [affects his sentence], favorable consideration for such factors lies solely within the province of the department of health & social services"); *Hayes v. State,* 46 Wis. 2d 93, 105–06, 175 N.W.2d 625 (1970) (noting that under indeterminate sentencing, "[t]he place of detention, amount of security, length of incarceration and parole are matters within the primary jurisdiction of the Department of Health & Social Services").

TIS-I. It is within this framework that we review Crochiere's and the State's contentions.

B. Standard of Review

¶ 10.    Whether a fact or set of facts constitutes a new factor is a question of law that we decide de novo. *State v. Lechner,* 217 Wis. 2d 392, 424, 576 N.W.2d 912 (1998). However, whether a sentence should be modified based upon a new factor is a decision committed to the circuit court's discretion, which we will not disturb unless it was erroneously exercised. *Id.*

C. Inherent Power of the Courts

¶ 11.    Courts have those inherent powers that are necessary "to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *State ex rel. Friedrich v. Circuit Court for Dane County,* 192 Wis. 2d 1, 16, 531 N.W.2d 32 (1995). The power to modify a sentence is one of the judiciary's inherent powers. *Hayes v. State,* 46 Wis. 2d 93, 101, 175 N.W.2d 625 (1970).[9] This power is exercised to prevent the continuation of unjust sentences. *State v. Franklin,* 148 Wis. 2d 1, 9, 434 N.W.2d 609 (1989).

¶ 12.    However, a circuit court's inherent authority to modify a sentence is a discretionary power that is exercised within defined parameters. For example, "a court has the power to correct formal or clerical errors or an illegal or a void sentence at any time," *Hayes,* 46

[9] *Hayes* was overruled in part by *State v. Taylor,* 60 Wis. 2d 506, 210 N.W.2d 873 (1973), regarding an issue that is not relevant to the court's inherent authority to modify sentences.

67

Wis. 2d at 101–02. Also, a court has the inherent authority to modify a sentence if a new factor is presented, *id.* at 103, or if the sentence is "unduly harsh or unconscionable." *Cresci v. State,* 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979); *State v. Grindemann,* 2002 WI App 106, ¶ 21, 255 Wis. 2d 632, 648 N.W.2d 507. However, there must be some finality to the imposition of a sentence. *See State v. Wuensch,* 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975). Therefore, we have held that it would be an erroneous exercise of discretion to modify a sentence simply because upon reflection the court may have chosen a different one. *Scott v. State,* 64 Wis. 2d 54, 59, 218 N.W.2d 350 (1974). Similarly, a court cannot set a harsh sentence to "shock" the defendant, while intending to reduce the sentence after the defendant has fully realized the loss of liberty he faces. *See Wuensch,* 69 Wis. 2d at 480 (stating, "[t]he trial court cannot change the sentence upon mere reflection or indulge in 'shock treatment' ").

D. "New Factor"

¶ 13.   As set out above, one of the parameters in which a circuit court has the inherent power to modify a sentence is through the showing of a new factor, if that new factor is one that warrants sentence modification. *Hayes,* 46 Wis. 2d at 103. It is within this area of the court's inherent authority that Crochiere claims that his sentence should be modified.

¶ 14.   In order to obtain sentence modification based on a new factor, an inmate must show that:   (1) a new factor exists; and (2) the new factor warrants modification of his or her sentence. *Franklin,* 148 Wis. 2d at 8. A new factor is not just any change in circumstances subsequent to sentencing. Rather, it is:

a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State,* 70 Wis. 2d 280, 288, 234 Wis. 2d 69 (1975). A new factor has been further defined as "an event or development which frustrates the purpose of the original sentence." *State v. Champion,* 2002 WI App 267, ¶ 4, 258 Wis. 2d 781, 654 N.W.2d 242; *see also State v. Michels,* 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989) (concluding that the new factor standard has been further refined since *Rosado* as those factors that frustrate the purpose of the original sentence). A defendant must prove a new factor by clear and convincing evidence. *Champion,* 258 Wis. 2d 781, ¶ 4.

¶ 15. New factor analysis has been applied to a multitude of factual circumstances, with appellate courts often reaching the conclusion that the facts presented were insufficient to establish a new factor. For example, a new factor has been held not to include any of the following: an inmate's desire to testify at a post-conviction hearing regarding his side of the story, *Rosado,* 70 Wis. 2d at 288; the introduction of sentencing guidelines recommending a different sentence than the one a convicted defendant received, *State v. Macemon,* 113 Wis. 2d 662, 669, 335 N.W.2d 402 (1983); disparity in sentencing between co-defendants, *State v. Toliver,* 187 Wis. 2d 346, 361–62, 523 N.W.2d 113 (Ct. App. 1994); an inmate's progress or rehabilitation while incarcerated, *State v. Kluck,* 210 Wis. 2d 1, 7–8, 563 N.W.2d 468 (1997) and *State v. Krueger,* 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984); an inmate's response to treatment while incarcerated, *State v. Prince,* 147 Wis. 2d 134, 136–37, 432 N.W.2d 646 (Ct.

App. 1988); an inmate's shorter-than-normal life expectancy, *State v. Ramuta,* 2003 WI App 80, ¶ 21, 261 Wis. 2d 784, 661 N.W.2d 483; or an inmate's post-sentencing declining health, *Michels,* 150 Wis. 2d at 99–100.[10]

¶ 16.  On the other hand, new factors have been identified where the untreatable nature of an inmate's mental condition is such that it "frustrated" a primary condition of his sentence, *State v. Sepulveda,* 119 Wis. 2d 546, 560–61, 350 N.W.2d 96 (1984); a potential conflict of interest of the mental health professional who conducted the psychological assessment of a convicted defendant for the sentencing court, *State v. Stafford,* 2003 WI App 138, ¶ 17, 265 Wis. 2d 886, 667 N.W.2d 370; and a convicted defendant's post-sentencing voluntary submission to revocation of his parole based on erroneous advice from his probation agent, *State v. Norton,* 2001 WI App 245, ¶ 16, 248 Wis. 2d 162, 635 N.W.2d 656.

¶ 17.  Crochiere claims he has shown a new factor by his rehabilitation and the court's lack of knowledge of his child support obligation. Of those new factor published appellate cases in which sentences were imposed under TIS-I, only *Champion* involved an alleged new factor based on rehabilitation subsequent to sentencing,[11] where the lack of the parole commission and its potential effect on new factor analysis was at issue.

---

[10] This compilation is not meant to be inclusive, but illustrative.

[11] The other new factor cases in which the inmate was sentenced under TIS did not focus on rehabilitative efforts. For examples:  *see State v. Cole,* 2003 WI 59, 262 Wis. 2d 167, 663 N.W.2d 700 (deciding the effect of the circuit court's use of the phrase "presumptive minimum" on Cole's sentence under TIS); *State v. Ramuta,* 2003 WI App 80, 261 Wis. 2d 784, 661 N.W.2d 483 (examining whether an inmate's shorter-than-normal life expectancy is a new factor warranting sentence modification);

¶ 18. Champion pled guilty to causing great bodily harm by the intoxicated use of a motor vehicle. *Champion,* 258 Wis. 2d 781, ¶ 2. When sentencing her to three years in prison, the court commented on her need for a period of confinement sufficient to receive treatment for her problems with alcohol. *Id.* After fourteen months of confinement, Champion moved to modify her sentence from three to two years of confinement because she had met the rehabilitative purpose in less time than the court had anticipated. *Id.,* ¶ 3. She contended that although this would not have been a new factor if she had been sentenced under indeterminate sentencing, it was a new factor under TIS-I because she did not have the opportunity to have the parole commission consider her rehabilitation. *Id.,* ¶ 6.

¶ 19. In a well-reasoned decision, the court of appeals concluded that to do as Champion requested would undercut the clear intent of the legislature in enacting TIS. *Id.,* ¶ 17. It explained that the legislature enacted laws that would cause a sentence of one year of incarceration to result in one year of incarceration and that the legislature eliminated parole to assure that an inmate's conduct while incarcerated would not change the certainty of the sentences imposed. *Id.*

¶ 20. Crochiere contends that we should reject the reasoning in *Champion* because *Champion* was grounded solely on the inmate's rehabilitation during incarceration. While by comparison, Crochiere also has a child support obligation, which was not known to the circuit court at sentencing and is linked to his rehabili-

and *State v. Torres,* 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400 (discussing a change in classification for the crime of conviction).

tation.[12] Crochiere points out that his rehabilitative efforts, which have resulted in his classification as a minimum security prisoner with off-site work approval by the Department of Corrections, demonstrate that he should be released early so he can resume the job he had before he was imprisoned and earn approximately ten dollars per hour, thereby increasing his ability to help support his child.

¶ 21.   The circuit court held a hearing to permit Crochiere to develop all the facts relevant to his child support obligation. The court then reviewed the factors on which it based Crochiere's sentence and concluded that its lack of knowledge that Crochiere had a son to help support would not have affected the sentence it imposed. The court said,

> And the question, in my mind, looking at all the factors that I went through in sentencing the defendant, would that information [regarding the defendant's child support obligations and the child's mother's dependence on that child support] have made a difference in the sentence that I came up with? And I have to say that it would not have.

Therefore, even though the circuit court initially was unaware of Crochiere's obligation to support his son, that fact was not one that frustrated the purpose of the sentence imposed.

¶ 22.   Additionally, Crochiere's rehabilitation is not a circumstance that frustrates the purpose of the sentence. The record shows that the circuit court was most concerned about Crochiere's repeated operation of a motor vehicle while intoxicated (OMVWI), his two

---

[12] Apparently his child support obligation was omitted from the presentence investigation report, and Crochiere did not mention it to the court.

previous convictions for OMVWI, the reckless conduct that resulted in an injury to the officer who stopped him for speeding, his assaulting another inmate while incarcerated and the lengthy list of his prior misdemeanor convictions as evidence that Crochiere had little remorse for his past criminal conduct. The court was of the opinion that Crochiere was a danger to the community. Deterrence and punishment were the major factors upon which the court focused. And, as has been noted, rehabilitation while incarcerated is not a circumstance that will frustrate the purpose of a sentence, *Champion*, 258 Wis. 2d 781, ¶ 13, as we conclude it is likely that circuit courts sentence with the hope that rehabilitation will occur.

¶ 23. Furthermore, Crochiere's early release would undercut the seriousness of the offense, the court's concern about the victim's injuries and its efforts at protecting the public. And, as *Champion* pointed out when interpreting TIS-I, the legislature intended that conduct subsequent to incarceration would not reduce an inmate's sentence.[13] In sum, we conclude Crochiere has failed to persuade us, just as he failed to persuade the circuit court and the court of appeals, that the facts he presents constitute a new factor that could be used to modify his sentence.

¶ 24. And finally, a decision on whether to modify a sentence is within the circuit court's discretion. *See Lechner,* 217 Wis. 2d at 424; *Franklin,* 148 Wis. 2d at 8;

---

[13] To do what Crochiere asks of us would turn circuit courts into parole boards, a result that would change the role of the circuit courts and be inconsistent with the legislature's intent in TIS-I.

*Champion,* 258 Wis. 2d 781, ¶ 4; *Michels,* 150 Wis. 2d at 97. In order to succeed on a claim for sentence modification based on a new factor, an inmate must prevail in both steps of new factor analysis by proving the existence of a new factor and that it is one which should cause the circuit court to modify the original sentence. *Franklin,* 148 Wis. 2d at 8. Accordingly, we point out that if a circuit court concludes that the facts shown are insufficient to constitute a new factor, as a matter of law, it need go no further in its analysis to decide the inmate's motion. Or, in the alternative, a circuit court may assume that a new factor does exist, without articulating the first step of new factor analysis, if the court concludes that in the exercise of its discretion, the alleged new factor is insufficient to warrant sentence modification.

¶ 25. Here, when the circuit court became aware of Crochiere's child support obligation, it held a hearing to take additional testimony to determine whether that fact would have caused it to select a sentence different from that which it imposed and concluded it would not. It also concluded that Crochiere's rehabilitation was insufficient to constitute a new factor. In so doing, the circuit court correctly identified and applied the law. Accordingly, we conclude that the circuit court appropriately exercised its discretion in refusing to modify Crochiere's sentence.[14]

### III. CONCLUSION

¶ 26. In conclusion, we reaffirm that circuit courts have inherent authority to modify sentences on the basis of a new factor. Additionally, we continue to

---

[14] In order to properly exercise its discretion, a circuit court must apply the correct law. *See State v. Robinson,* 146 Wis. 2d 315, 330, 431 N.W.2d 165 (1988).

employ existing "new factor" jurisprudence for TIS-I sentences, while noting there may be additional new factors unique to TIS-I that we have not previously identified. However, we conclude, as did the court of appeals, that Crochiere has presented no information that constitutes a new factor supportive of sentence modification and that the circuit court appropriately exercised its discretion when it identified and applied the correct law in denying his motion. Therefore, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.