STATE of Wisconsin,
Plaintiff-Respondent,

v.

Frederick W. PRAGER,
Defendant-Appellant.

Court of Appeals

*No. 2004AP843–CR. Oral argument February 22, 2005.
—Decided April 13, 2005.*

2005 WI App 95

(Also reported in 698 N.W.2d 837.)

On behalf of the defendant-appellant, there were briefs and oral argument by *Daniel P. Fay*, Pewaukee.

On behalf of the plaintiff-respondent, there was a brief by *William L. Gansner*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *William L. Gansner*.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Frederick W. Prager appeals from an amended judgment of conviction, specifically challenging the sentence imposed by the circuit court. Prager argues that the circuit court improperly applied the new factor analysis to resentence him. We agree that there was no new factor upon which to base a modified sentence. Accordingly, the amended judgment of conviction and sentence of the circuit court are reversed. We remand with directions for the circuit court to reinstate the original judgment of conviction, sentence, and probation placement with conditions.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. The facts are undisputed. On March 10, 2003, Prager pled guilty to one count of repeated sexual assault of the same child contrary to WIS. STAT. § 948.025(1) (2003–04).[1] Two additional counts were dismissed, with the provision they would be read in at sentencing. At the time of the conviction, Prager was seventy years old and faced a maximum of sixty years in prison. The State agreed to recommend a fourteen-year sentence: seven years of incarceration followed by seven years of extended supervision. Prager retained the right to argue at sentencing and the circuit court ordered a presentence investigation report (PSI).

¶ 3. Prager's attorney submitted a letter to the circuit court on April 21, 2003, which accompanied an independent treatment report, a letter from Prager's wife, and additional letters of support. In that letter, Prager's attorney recommended a stayed fourteen-year sentence, with equal prison and extended supervision time, and an initial twelve months in jail with Huber privileges, followed by fifteen years of probation with certain conditions. It was also noted that if Prager went to prison, the income from his small engine repair business as well as his social security income would cease and, as a result, his wife and other family members would suffer.

¶ 4. On May 1, 2003, the circuit court convicted Prager and imposed and stayed a fourteen-year sentence with four years of initial incarceration and ten years of extended supervision. The court then ordered a fourteen-year period of probation with numerous conditions attached. The court stated that the offer of

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

probation during the term of the stayed sentence was a direct result of Prager's representations that his wife needed him "from a physical standpoint, from an emotional standpoint, and from an economic standpoint." The circuit court signed the judgment of conviction with the attending sentence on May 9, 2003.

¶ 5. On May 7, 2003, the State moved for reconsideration of Prager's sentence, contending that Prager had misrepresented his wife's economic circumstances and the hardship his imprisonment would cause her. Specifically, the State alleged that Prager's $300,000 farm had been transferred by quitclaim deed to Mrs. Prager fifty-five days after his initial appearance in court.[2]

¶ 6. At the reconsideration motion hearing on June 13, 2003, the circuit court rejected the State's argument and ruled that Prager had not made a fraudulent misrepresentation to the court, but that

---

[2] At the initial appearance on September 4, 2002, Prager informed the circuit court that he owned a 150–acre farm in Racine county. In the original PSI, dated April 22, 2003, Prager described a prior bankruptcy without a loss of the farm. He also explained that they rent the farm out to a neighbor. In the second PSI, dated September 9, a more comprehensive picture of the Pragers' financial situation was included. The investigator used 2002 real estate property tax information and 2002 federal tax returns to identify the Pragers' assets and income. The investigator reported that

> [t]he Prager family's financial situation is strained as the result of the current case . . . . There is no mortgage on the farm property and it has a value of [$]300,000.00 according to the property tax assessment of 2003 . . . . The farm property was transferred into the name of [Mrs.] Prager [by quit]claim deed on March 17, 2003 putting the property in her name. Both the defendant and his wife stated that they were advised by their first attorney that this would be a wise thing to do as Mrs. Prager would then have the authority to make decisions regarding the property on her own.

ownership of the farm was a new factor that "had it been known to the Court at the time of sentencing, would have been a significant factor in terms of the sentencing scheme." The court decided that the original sentence "must be set aside and . . . declared void." The court directed that a new PSI be prepared and instructed that it "is to correct or add to, explain the prior information that was contained in the original report, but is not to duplicate it." The court directed the PSI author to "try to get detailed statements, impact statements, from . . . the victim or victims [and their families] so that we really have somewhat of a comprehensive picture that is going to be supplied in terms of the [PSI]." The court indicated a particular interest in "knowing the [victims'] views . . . because I believe that there was quite a divergence. Be nice to have that information plus the medical information plus the economic information."

¶ 7. On September 19, 2003, Prager was resentenced. The circuit court imposed a ten-year sentence, three years in prison followed by seven years of extended supervision. Prager appeals.

## DISCUSSION

¶ 8. The State, rather than Prager, sought modification of Prager's sentence.[3] After the original sentencing, the State sought resentencing under *State v.*

---

[3] We note that the overwhelming majority of cases dealing with a new factor analysis are prompted by a defendant's motion rather than the State's. As a result, most Wisconsin case law on the new factor analysis addresses principles and policies associated with a defendant's attempt to reduce the sentence. *See, e.g., Rosado v. State*, 70 Wis. 2d 280, 234 N.W.2d 69 (1975); *State v. Franklin*, 148 Wis. 2d 1, 434 N.W.2d 609 (1989); *State v.*

816

*Jones*, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, *review denied*, 2003 WI 126, 265 Wis. 2d 416, 668 N.W.2d 557 (WI Aug. 13, 2003) (No. 2001AP2969–CR), arguing that Prager "misinformed the Court as to the ownership of the farm" and that this misrepresentation influenced the circuit court's sentence. The circuit court rejected the State's contention, stating that Prager's "nondisclosure of the ownership interest does not rise to the level of information referred to in the *Jones* case and is not a fraudulent misrepresentation."

¶ 9. The circuit court then broadened the issue beyond the scope of the State's motion and embarked on a new factor analysis. *See State v. Crochiere*, 2004 WI 78, ¶ 13, 273 Wis. 2d 57, 681 N.W.2d 524 (a circuit court has the power to modify a sentence upon the showing of a new factor, if that new factor warrants sentence modification). In the end, the court *reduced* rather than *increased* Prager's sentence; however, the practical impact was harsher because the court neither stayed the sentence nor placed Prager on probation.

¶ 10. Prager presents two issues for our consideration. First, he contends that his Fifth Amendment right to be free from double jeopardy was violated when the circuit court imposed a second punishment for the original offense. Second, Prager argues that there was no new factor to justify resentencing. We take these issues in reverse order because the new factor analysis is dispositive. We need not reach the merits of Prager's double jeopardy argument because we reverse on other grounds. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997).

*Hegwood*, 113 Wis. 2d 544, 335 N.W.2d 399 (1983); *State v. Michels*, 150 Wis. 2d 94, 441 N.W.2d 278 (Ct. App. 1989); *State v. Crochiere*, 2004 WI 78, 273 Wis. 2d 57, 681 N.W.2d 524.

¶ 11. A new factor must be "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). "The trial court cannot reduce or increase a sentence upon its reflection that the sentence imposed was harsh or inadequate." *State v. Wuensch*, 69 Wis. 2d 467, 479, 230 N.W.2d 665 (1975); *see also State v. Johnson*, 158 Wis. 2d 458, 467, 463 N.W.2d 352 (Ct. App. 1990).

¶ 12. We recognize the deference accorded a sentencing court and, as a general rule, we do not interfere with a sentencing court's exercise of discretion. *See State v. Gallion*, 2002 WI App 265, ¶ 26, 258 Wis. 2d 473, 654 N.W.2d 446, *aff'd,* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197. Here, however, the threshold question is whether a new factor exists. In this we owe no deference to the circuit court as it presents a question of law and our standard of review is de novo. *See State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989). A party must demonstrate the existence of a new factor by clear and convincing evidence. *State v. Franklin*, 148 Wis. 2d 1, 9–10, 434 N.W.2d 609 (1989). We have characterized a new factor as "an event or development which frustrates the purpose of the original sentence." *State v. Champion*, 2002 WI App 267, ¶ 4, 258 Wis. 2d 781, 654 N.W.2d 242 (citation omitted).

¶ 13. Here, the circuit court's express purpose for staying Prager's sentence and placing him on probation was to protect the existing victims without creating new victims: specifically, Prager's wife, daughter, and

grandsons, who rely on him emotionally and financially. During arguments at sentencing, Prager raised the special financial circumstances of his case. He stated that if sent to prison his social security and medicare benefits would terminate, including those that flow through him to his wife. He also asked the court to keep him in the community so that he could care for his wife, who has epilepsy. Taking this into consideration, the court made its purpose clear, stating:

> I have come to the conclusion after reading and then rereading that if I put you in prison, I will create more victims and I don't think that that's what the Court should do. So I am going to impose a sentence on you and I am going to stay it and then I'm going to give you the option of going on probation . . . .
>
> . . . .
>
> I was persuaded and gave a lot of credence to the representations to the Court which indicate that your wife really needs you from a physical standpoint, from an emotional standpoint, and from an economic standpoint . . . . [T]he two guiding principles here for this Court in imposing a stayed sentence on you are, number one, and I don't want to create more victims than you have created and I am very concerned about your wife, and then, secondly, you yourself have represented that she is in need of you and so hopefully that's the way it will work out.

¶ 14. To support resentencing, the quitclaim deed —the only new factor alleged here—must be highly relevant to the sentence. *See Rosado*, 70 Wis. 2d at 288. The farm was a peripheral matter at the original sentencing, as the only discussion regarding the farm was in the context of a probation condition that Prager no longer reside there.

¶ 15. We turn to the circuit court's rationale upon resentencing to determine whether the quitclaim deed was indeed highly relevant. There, the court noted that Mrs. Prager's interest in the farm as marital property was approximately $150,000. It characterized Mrs. Prager's interest as a "significant sum of money" and observed that she was "economically with respect to the farm not dependent on Mr. Prager." The court did not, however, explain how this information was new or highly relevant to the original sentencing scheme or to the resentencing.[4] The court also noted that Mrs. Prager did not wish to sell, but would rather continue to collect the rents from the farm to cover the real estate taxes, insurance, and upkeep of the property and to provide a source of income for herself. Again, the court did not explain how Mrs. Prager's financial options had changed as a result of the quitclaim deed. In short, the relevance of the new factor was not evident in the court's rationale.

¶ 16. "There must be some connection between the factor and the sentencing—something which strikes at the very purpose for the sentence selected by the trial court." *Michels*, 150 Wis. 2d at 99. Here, the quitclaim deed's potential financial ramifications are largely absent from the circuit court's rationale upon resentencing:

> I am no longer persuaded that probation is appropriate. The extent of the harm caused to the victims is now known to the Court and was not previously. The financial and supportive impact of removing the defendant from the community and his wife is not as initially

---

[4] Although neither party argues the impact of marital property law, presumably, Mrs. Prager would have had the same interest in the marital asset had the title been held by Prager himself or both spouses jointly.

understood based on information now supplied to the Court. One of the positives referred to by [Prager's therapist] as a predictor that there would be success and treatment and also a lack of recidivism in the future was the defendant's supportive network of family. This is incorrect. The defendant is estranged from his sons. And rather than the totally supportive wife, the wife is now conflicted, confused as to the full impact of the events that have become clearer to her.

¶ 17. Further, the court's concluding comments reveal that its focus was not on the new financial information:

> I want to be very candid with you. I really did not—how should I put this—when it came to the impact of this on the victims, there was a vacuum of information and one could take what was available as information, and there were a number of scenarios one could draw from the information then available, that was the first [PSI]. Now the second [PSI] just totally pre-empts and it's now known the depth of what we're dealing with insofar as these victim children are concerned.[5]

¶ 18. Our supreme court has stated that a sentencing court "should not reduce a sentence on 'reflection' alone or simply because it has thought the matter

---

[5] In the second PSI, the investigator reported that the victims' parents felt Prager "received a slap on the hand at his sentencing, the girls are not happy at all . . . . There was a price to pay. It was not paid. The girls said why did we go through all of this, for nothing." The victims had similar reactions to the original sentencing. One stated, "The justice system is stupid . . . . I think that [Prager] should be in prison for what he did to me." The other echoed the sentiment, stating, "The first sentence [Prager] got was like a bad vacation, it was wrong." The investigator described the victims' anger as "palpable."

over and has second thoughts. It must base its modification on 'new factors' brought to its attention." *Johnson,* 158 Wis. 2d at 467 (quoting *State v. Macemon,* 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983)). We have stated that a change of heart by the sentencing court is not a new factor supporting resentencing. *See id.* Further, resentencing is not required every time a victim or anyone else addressing the sentencing court has a change of heart. *Id.*

¶ 19. It is well established that a circuit court should consider all relevant information at resentencing. *State v. Naydihor,* 2002 WI App 272, ¶¶ 27–28, 258 Wis. 2d 746, 654 N.W.2d 479, *aff'd,* 2004 WI 43, 270 Wis. 2d 585, 678 N.W.2d 220. Here, the circuit court considered all of the appropriate sentencing factors, including: the gravity of Prager's offense, his character and rehabilitative needs, and protection of the public. *See Gallion,* 258 Wis. 2d 473, ¶ 26. However, when resentencing based upon a new factor, the court's rationale must clearly reflect the high relevance of the new factor. "There must be some connection between the factor and the sentencing—something which strikes at the very purpose for the sentence selected by the trial court." *See Michels,* 150 Wis. 2d at 99. Given the circuit court's extensive commentary and express interest in factors other than the quitclaim deed and its impact on the economic well-being of Prager's family, we conclude that there was only a minimal connection between the factor and the court's resentencing. For this reason, we are convinced that no new *highly relevant* factor exists. *See Rosado,* 70 Wis. 2d at 288.

¶ 20. As stated earlier, we do not reach the merits of Prager's double jeopardy argument because our new factor analysis disposes of the appeal. *See Castillo,* 213 Wis. 2d at 492. Nonetheless, we observe that Prager

was subject to a final judgment of conviction and sentence imposed on May 1, 2003, and signed on May 9, 2003. The circuit court subsequently set aside the conviction and declared the sentence void, raising concerns about whether the court's resentencing was in fact the *modification* of an existing sentence or the imposition of a second conviction and sentence for the original offense. The Fifth Amendment's Double Jeopardy Clause protects against multiple punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117, 120, 129 (1980).[6]

## CONCLUSION

¶ 21. We conclude that the new information concerning the quitclaim deed did not constitute a highly relevant new factor that "strikes at the very purpose for the sentence selected." *See Michels*, 150 Wis. 2d at 99. Further, "[t]he trial court cannot reduce or increase a sentence upon its reflection that the sentence imposed was harsh or inadequate." *Wuensch*, 69 Wis. 2d at 479; *Johnson*, 158 Wis. 2d at 467. The circuit court did not make a clear connection between the quitclaim deed and either sentence in its rationale; therefore, the only

[6] A similar concern may be raised regarding Prager's probation placement. In *State v. Sepulveda*, 119 Wis. 2d 546, 560, 350 N.W.2d 96 (1984), our supreme court held that a circuit court may use a new factor to invoke its power to modify the terms of probation under WIS. STAT. § 973.09(3)(a). Here, Prager's probation was not modified; rather, it was abandoned upon resentencing. This was done despite the undisputed fact that Prager had not violated any of the conditions of probation. Prager's resentencing served to revoke his probation without any finding of probable cause. Revocation of probation is an administrative, not judicial, procedure pursuant to WIS. STAT. § 973.10(1) and (2).

reasonable conclusion is that Prager's resentencing was based on reflection. Accordingly, the amended judgment of conviction and sentence of the circuit court are reversed. We remand with directions for the circuit court to reinstate the original judgment of conviction, sentence, and probation placement with conditions.

*By the Court.*—Judgment reversed and cause remanded with directions.