NEUBAUER, C.J.[1]
¶1 Shawn A. Hodgkins appeals from a judgment of conviction and an order denying his postconviction motion, arguing that the judgment should be amended to stay the collection of court costs until his probation begins and that his prison sentence should be reduced in light of the victim's postsentencing letter requesting a reduced sentence to allow Hodgkins to help parent their child. We affirm, concluding that Hodgkins failed to exhaust his administrative remedies regarding his cost claim and that the victim's postsentencing request is not a new factor to support a reduced sentence.
BACKGROUND
¶2 For several incidents involving his then-girlfriend C.P., Hodgkins was charged in November 2015 with two counts of strangulation, three counts of battery, two counts of disorderly conduct, two counts of criminal damage to property, and one count of resisting arrest, each with a repeater penalty enhancer. Pursuant to an agreement, Hodgkins pled guilty to two counts of battery and to the one count of resisting, including the enhancers.
¶3 At the February 8, 2016 sentencing hearing, C.P. was present, but chose not to make a statement in court. Her victim impact statement had been filed. The State indicated C.P. was requesting that contact with Hodgkins be allowed solely for the purpose of parenting, as they were about to have a child. The State recommended an unspecified period of prison, followed by a lengthy period of extended supervision.
¶4 Hodgkins addressed the court, stating he was excited to become a father, he wanted to be around to help his child, and he did not want his child to face the same hardships he had. The court also heard statements from Hodgkins' sister and from a woman who helped raise him.
¶5 The court noted that Hodgkins' history showed that he had not yet "been amenable to" treatment and counseling for his domestic violence and anger management issues. It acknowledged Hodgkins' desire to be a good parent, but indicated "until you're able to address some of your issues, you're going to have a very difficult time being a parent ... notwithstanding what may be your desire or even that of the child's mother for you to be involved in the child's life." The court further explained, "to be an appropriate parent ... [is] going to require work and effort on your part that at least up to this point you haven't been able to do."
¶6 On one battery count, the court imposed a sentence of eighteen months of initial confinement and six months of extended supervision. On each of the remaining two counts, the court imposed one year of initial confinement followed by one year of extended supervision, consecutive to each other and to the first count, but stayed the sentences and put Hodgkins on probation for two years. The court ordered Hodgkins to have no contact with C.P., "with the exception of issues involving the child. I'm satisfied that is in everybody's interest." The court also ordered court costs (which included surcharges for victim/witness assistance and DNA sample) in the amount of $929 "that can be paid as a condition of probation in this matter."
¶7 In January 2017, Hodgkins moved to amend the judgment of conviction because the department of corrections (DOC) was garnishing his prison funds as payment of the court costs. Hodgkins asserted that the court intended those costs to be paid as a condition of probation and that the judgment should be amended to stay collection of the costs until his probation began. Hodgkins also moved for a reduced prison sentence on account of an alleged new factor, specifically that C.P. had written a letter asking the court for the reduction so that Hodgkins could better help parent their child.
¶8 The circuit court denied both motions. On the costs, although the court generally agreed its intent was that Hodgkins would not have to pay the costs until he served probation, it reasoned that the DOC had broad authority to collect such costs and that Hodgkins would have to take the matter up with the DOC directly. On the sentence reduction, the court considered C.P.'s wishes for a lighter sentence to be a "change of heart" rather than a new factor that would warrant a reduction. The court noted that C.P. had the opportunity to express her thoughts at the sentencing hearing, but she chose not to do so. Hodgkins appeals.[2]
DISCUSSION
Collection of Court Costs
¶9 Hodgkins takes no issue with either the imposition or the amount of the court costs. Rather, he challenges the timing of their collection, contending they were not to be collected until his probationary sentence began. He argues the circuit court erred when it refused to amend the judgment, consistent with the court's own intent, to stay collection until that time. The State counters that the issue is moot, as the costs have already been paid in full. In its brief, the State asserts it had contacted the correctional facility having custody of Hodgkins and was advised that, "as of August 28, 2017, all debts relating [to] the underlying criminal matter had been settled and there was[,] in fact, no further garnishing of [Hodgkins'] prison accounts and wages."
¶10 We reject Hodgkins' cost claim. Because he failed to first seek recourse through the DOC's internal process and exhaust his administrative remedies, the circuit court lacked competency to address the matter.
¶11 Once a prison sentence is imposed, an inmate generally must address any objections to the DOC's procedures, such as deductions made from prison accounts, through the inmate complaint review system. See State v. Williams , 2018 WI App 20, ¶¶1-5, 380 Wis. 2d 440, 909 N.W.2d 177 ; WIS. ADMIN. CODE § DOC 310 (Oct. 2018). That system gives inmates "a process by which grievances may be expeditiously raised, investigated, and decided." Sec. DOC 310.01(1). Only after all such available administrative remedies have been exhausted may the inmate then seek redress through the courts via a writ of certiorari. See Williams , 380 Wis. 2d 440, ¶¶4-5 ; see also § DOC 310.05; WIS. STAT. § 801.02(7)(b). As Hodgkins had not pursued, much less exhausted, his administrative remedies with the DOC, "the circuit court, sitting as the sentencing court, did not have competency to entertain" his claim.[3] See Williams , 380 Wis. 2d 440, ¶1.[4]
Reduction of Prison Term
¶12 Hodgkins argues that the postsentencing letter written by C.P. requesting a reduction of his prison term so that he can help parent and support their child is a "new factor" warranting a sentence modification. We disagree.
¶13 Before modification of a sentence is considered, the defendant must show a "new factor," specifically information "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." State v. Boyden , 2012 WI App 38, ¶5, 340 Wis. 2d 155, 814 N.W.2d 505 (citation omitted). Such a new factor must be shown by clear and convincing evidence, which presents a question of law we review independently. Id. , ¶¶5-6. If such a factor is shown, whether it justifies sentence modification is within the circuit court's discretion, a decision we will uphold unless the discretion was exercised erroneously. Id. , ¶6.
¶14 C.P.'s letter is not a new factor. It does not contain information that was unknown to the circuit court at the time of sentencing. Aware that C.P. was pregnant and that Hodgkins was the expectant father, the court took into account the effect of prison on Hodgkins' ability to coparent and to provide financially for his child. It considered and referred to Hodgkins' in-court statement about his desire to be a good parent, even noting that C.P., despite her silence at the hearing, may desire to have Hodgkins "be involved in the child's life." Indeed, the court's sentencing order allowed contact between Hodgkins and C.P., as requested by C.P. through the State, for the purpose of parenting. The sentiments expressed by C.P. in her letter cannot therefore be fairly characterized as a "new" factor unknown to the court at the time of sentencing.
¶15 Further, to the extent the letter reflects a "change of heart" by the victim and was in that sense a fact "not then in existence" at the time of sentencing, Hodgkins fails to explain why C.P.'s sentiments expressed in her letter are more "highly relevant" to the determination of Hodgkins' prison term than her original sentiments as reflected by her silence at the hearing and in her victim impact statement. See State v. Prager , 2005 WI App 95, ¶18, 281 Wis. 2d 811, 698 N.W.2d 837 ("[R]esentencing is not required every time a victim or anyone else addressing the sentencing court has a change of heart.").
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version.

In October 2017, counsel for Hodgkins filed a no merit report. Hodgkins subsequently decided he wanted to proceed pro se with a merits appeal. Accordingly, counsel was relieved of further representing Hodgkins in this matter and the no merit report was stricken.

Although the circuit court did not base its denial of the motion on competency grounds, it alluded to the notion when it advised Hodgkins that the deductions from his prison account was "an issue you're going to need to address with the [DOC] under the circumstances."

Given our analysis, we need not reach mootness.