STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jack W. KLUBERTANZ,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP1256–CR. Submitted on briefs November 4, 2005.
—Decided March 16, 2006.*

## 2006 WI App 71

(Also reported in 713 N.W.2d 116.)

† Petition to review denied 9-21-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha K. Askins, asst. state public defender*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charlotte Gibson, asst. attorney general*, and *Peggy A. Lautenschlager, attorney general*.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J. Jack W. Klubertanz appeals an order denying his postconviction motion for resentencing. First, he contends the circuit court erroneously exercised its discretion when it failed to adequately explain the sentence it imposed. Second, he contends the circuit court erred in deciding it did not have the authority to modify the sentence based on his argument that his sentence became unduly harsh because he was sexually assaulted while in prison. We conclude the circuit court adequately explained the sentence it imposed on Klubertanz. We also conclude the circuit court correctly decided that its authority to modify a sentence based on events that occurred after sentencing is defined by "new factor" jurisprudence. Because the sexual

assault in prison is not a new factor under the case law, the circuit court correctly decided that it did not have the authority to modify the sentence based on the assault. We therefore affirm the sentence.

## BACKGROUND

¶ 2. Klubertanz was charged with repeated sexual assault of the same child on three or more occasions in violation of Wis. Stat. § 948.025(1)[1] and five counts of causing a child to go into a vehicle or building with intent to have sexual contact or intercourse with the child in violation of Wis. Stat. § 948.07(1). The complaint alleged that Klubertanz met a fifteen-year-old girl over the internet and on five separate occasions over the course of approximately ten weeks met and had sexual contact and intercourse with her. Pursuant to a plea agreement, the State filed an amended information containing only the § 948.025(1) count, to which Klubertanz entered a guilty plea.

¶ 3. Sentencing took place on July 6, 2004. The victim spoke. She stated that the last time she had sexual contact with Klubertanz, while they were in his car and he was on top of her, "he swore that if [she] ever told anyone he would hunt [her] down," and she was frightened that he is going to "come for her." She described the depression, stress, and self-destructive thoughts she experienced as a result of her relationship with Klubertanz and the ways those had negatively affected her life and still continued to do so. Klubertanz's wife and stepson made statements in support of Klubertanz. Klubertanz spoke, apologizing to the victim and her family and explaining that he

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

understood what he did was wrong, but he was not now the same person; his actions had been a "lapse of judgment" and did not represent the person he really was.

¶ 4. The prosecutor asked the court to sentence Klubertanz to a term of imprisonment of twenty years with initial confinement of five years. Defense counsel asked the court to impose a term of probation, which both presentence reports had recommended.

¶ 5. The court began its comments by noting that the legislature considered a violation of Wis. Stat. § 948.025(1) to be a serious offense: it was defined as a serious sex offense under Wis. Stat. § 939.615(1)(b), designated as a Class B felony, and punishable by a maximum sentence of sixty years. *See* Wis. Stat. § 939.50(3)(b). The court then considered the particular circumstances of Klubertanz's conduct and found his offense to be a serious one. The court noted that it was not a "single lapse in judgment," but a course of deliberate conduct consisting of five encounters that took place over a ten-week period. The places of the five encounters, the court pointed out, were a car, a bathroom at a park, the victim's home, and a storage locker. The court also pointed out that the victim asserted there was sexual intercourse, although Klubertanz did not admit that. The court acknowledged that the victim had initially checked the box on the computer saying she was eighteen, but, the court stated, the record indicated that when Klubertanz met the victim he knew she was not eighteen. As a forty-six-year-old man, the court said, Klubertanz had no excuse at that point for proceeding to have sexual contact with her on that occasion, let alone four additional times. The court noted the destructive impact that sexual contact with a person so much older has on the psyche of a child.

¶ 6. The court also considered Klubertanz's character. It noted the lack of a juvenile record or prior adult criminal record and the positive things he had done in his life such as his work history, the years of coaching his daughters' basketball team, forming a relationship with his wife and her son, and his relationship with his own family and his friends. However, the court viewed Klubertanz's decision to have sexual contact with a fifteen-year-old as "repugnant." The court was troubled by the fact that Klubertanz had not acknowledged that he had a problem. The court noted that the presentence report stated that he had "sugar-coated" the truth when he told his wife. The court also referred to the internet sites that Klubertanz had frequented, which the prosecutor had explained consisted of pornography sites featuring teenage girls.

¶ 7. The court then addressed the need for protecting the public. It observed that Klubertanz had acted secretively and sought out locations on the computer where he could contact impressionable young teenagers. This conduct, coupled with Klubertanz's reluctance to admit the seriousness of his problem, posed a significant threat to the victim and to other young teens, and there was a need to make sure it was not repeated. There was also a need in the court's view to make sure that others understood that there would be serious consequences for anyone who engaged in this kind of conduct.

¶ 8. The court explained that it had read the presentence reports, which had recommended probation, and understood it had a duty to seriously consider whether probation was an appropriate sentence. However, it also believed it had a duty to impose a sentence that did not depreciate the seriousness of the offense and was consistent with the value our society attaches

to the obligation of adults to care for and protect children. The court rejected the probation recommendation and imposed a sentence of three years of incarceration followed by twelve years of extended supervision, one condition of which was the successful completion of a sex-offender program. The court explained to Klubertanz that his conduct deserved "swift, reasonable punishment and deterrence." The court also stated that Klubertanz needed to acknowledge what he had done; he needed treatment and would hopefully receive that while incarcerated and upon release; and hopefully the sentence would serve the purpose of rehabilitation, so that he would not repeat this conduct.

¶ 9. Approximately nine months after sentencing, Klubertanz filed a motion for postconviction relief, arguing that the circuit court should modify his sentence on two grounds. First, the court erroneously exercised its discretion by failing to adequately explain how the sentence it imposed related to its sentencing objectives, as required by *State v. Gallion*, 2004 WI 42, ¶¶ 38–46, 270 Wis. 2d 535, 678 N.W.2d 197. Second, the sentence was rendered unduly harsh when he was sexually assaulted while serving his sentence.[2]

¶ 10. With respect to the *Gallion* argument, the circuit court first reiterated its view that imprisonment was necessary: the offense was severe—Klubertanz's conduct was predatory, consisted of five assaults, and included not just touching but penetration; Klubertanz failed to acknowledge the full extent of what he had

---

[2] Klubertanz also argued that he was denied due process when the prosecutor during sentencing made a statement, without a factual basis, that presentence writers are under pressure not to recommend prison. The circuit ruled against him on this issue and Klubertanz does not challenge that ruling on appeal.

done; and there was a need to protect the public, deter similar conduct, and punish Klubertanz. The court also reiterated the reason it had rejected the probation recommendation: probation "depreciated the seriousness of the offenses." The court stated that *Gallion* does not require a sentencing court "to link each sentencing objective to a specific term of incarceration," but, rather, requires the court to provide a rational explanation for its decision based on the proper sentencing factors. The court concluded it had done that.

¶ 11. With respect to the argument based on the sexual assault in prison, the court heard the following testimony from Klubertanz. After he was sentenced, he was placed at the Dodge County Correctional Institute for intake and shared a cell with another inmate. The cellmate exposed himself to Klubertanz, prompting Klubertanz to write a request to the unit manager of the prison for a cell change. Klubertanz did not in his testimony state whether he told the unit manager the reason he wanted a cell change. Klubertanz's request was not granted. Klubertanz was sexually assaulted by his cellmate on July 18 and July 20, 2004. Klubertanz's cellmate threatened that, if Klubertanz told anyone about the assault, he would harm Klubertanz's wife, whose address he obtained from looking at Klubertanz's mail.

¶ 12. After being sexually assaulted, Klubertanz wrote another request to the captain of the unit, "cit[ing] safety reasons" for his request. He did not get a response. Subsequently, Klubertanz and his cellmate got into an argument and both were placed in segregation. While in segregation, Klubertanz told the prison authorities that his cellmate had sexually assaulted him. Prison officials placed Klubertanz in protective custody, then moved him to another institution, and put

in place an order that he and his former cellmate have no contact. The cellmate was moved to a different institution, placed in segregation, and his mail and telephone contacts were monitored to ensure he did not give out Klubertanz's wife's phone number or address. The prison officials also called the Dodge County police, and Klubertanz spoke briefly with a detective about the assault. He was given forms so that he could file a written statement about the assault with the police. Klubertanz did not state in his testimony whether he had filed anything with law enforcement or whether, if he did, any action was taken by law enforcement.

¶ 13. Klubertanz argued to the circuit court that the sexual assault rendered his sentence unduly harsh and the circuit court should modify his sentence because the parole board no longer existed. Klubertanz made clear that he was not arguing that the sexual assault was a new factor as that term has been used in the case law. *See, e.g., State v. Grindemann*, 2002 WI App 106, ¶¶ 21–22, 255 Wis. 2d 632, 648 N.W.2d 507.

¶ 14. The circuit court concluded there was no authority for the proposition that being subject to a criminal act in prison could render a sentence unduly harsh and, thus, be a basis for sentence modification. In the court's view it had the authority to modify the sentence based on the sexual assault only if it were a new factor under the case law, and the court concluded it was not.[3] The court also concluded that it had not erroneously exercised its discretion in imposing the sentence.

---

[3] Given its view of the law, the court found it unnecessary to make findings on Klubertanz's credibility, which the State challenged. Instead, the court assumed for purposes of its legal analysis that Klubertanz had been assaulted.

## DISCUSSION

### I. Adequacy of Sentencing Explanation

¶ 15. Klubertanz argues that the circuit court erroneously exercised its discretion because it failed to explain how the sentence it imposed related to its sentencing objectives as required by *Gallion*, 270 Wis. 2d 535. Klubertanz acknowledges that the court referred to the three primary factors a court is to consider in sentencing—the gravity of the offense, the character of the offender, and the protection of the public. However, he asserts *Gallion* also requires that the court identify the general objectives of the sentence, describe the facts relevant to these objectives, and explain why the sentence imposed advances these objectives.

¶ 16. In *Gallion*, the supreme court reaffirms the established law that sentencing is within the discretion of the circuit court and it reaffirms, too, the manner in which circuit courts are to properly exercise their sentencing discretion. *Id.*, ¶¶ 3–4, 8, 19, 26, citing *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). Discretion contemplates a process of reasoning based on the facts of record and reasonable inferences from those facts and a conclusion supported by a logical rationale founded upon proper legal standards. *McCleary*, 49 Wis. 2d at 277.

¶ 17. The principal objectives of a sentence include, but are not limited to, "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Gallion*, 270 Wis. 2d 535, ¶ 40 (citation omitted). A sentencing court should indicate the general objectives of greatest importance and explain how, under the facts of

the particular case, the sentence selected advances those objectives. *Id.*, ¶¶ 41–42. Besides the objectives of the sentence, the sentencing court must also identify the factors that the court considered in arriving at the sentence and must indicate how those factors fit the objectives and influenced the sentencing decision. *Id.*, ¶ 43. There must be "an explanation for the general range of the sentence imposed," *id.*, ¶ 49, but, the court recognized, "the exercise of discretion does not lend itself to mathematical precision." *Id.*

¶ 18. The primary sentencing factors that a court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public. *State v. Harris*, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977), citing *McCleary*, 49 Wis. 2d at 274–76. However, other factors may also be relevant. These include, but are not limited to: (1) the defendant's past record; (2) the defendant's history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) the presentence investigation report; (5) the vicious or aggravated nature of the crime; (6) the degree of the defendant's culpability; (7) the defendant's demeanor before the court; (8) the defendant's age, educational background and employment record; (9) the defendant's remorse, repentance and cooperativeness; (10) the defendant's need for close rehabilitative control; (11) the rights of the public, and (12) the length of pretrial detention. *Gallion*, 270 Wis. 2d 535, ¶ 43 & n.11 (citation omitted). In addition, the legislature has mandated consideration of certain aggravating factors for certain offenses. *Id.*, ¶ 43 n.12. The sentencing court need not discuss all these factors, but only those relevant to the particular case. *Id.*, ¶¶ 43, 46. The

weight to be given to each factor is within the discretion of the sentencing court. *Harris*, 75 Wis. 2d at 520.

¶ 19. The sentencing court may use the recommendations of counsel and presentence reports as "touchstones in [its] reasoning"; however, it is not obligated to do so. *Gallion*, 270 Wis. 2d 535, ¶ 47. The court must consider sentencing guidelines in certain cases, but these do not replace the court's exercise of discretion. *Id.*, ¶ 47 n.13. While a court must consider probation as the first alternative, a court may reject probation if it finds that it would "unduly depreciate the seriousness of the offense." *Id.*, ¶ 44 (citation omitted).

¶ 20. The court in *Gallion* also reaffirms the well-established standard of appellate review of a circuit court's sentence. Our review on appeal is limited to determining if discretion was erroneously exercised. *Id.*, ¶ 17. When the circuit court has exercised its discretion, we follow a consistent and strong policy against interference with the discretion of the circuit court, and we afford "a strong presumption of reasonability" to the court's sentencing determination because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant. *Id.*, ¶ 18 (citations omitted). At the same time, the court in *Gallion* states that, because of truth-in-sentencing legislation, appellate courts must "more closely scrutinize the record to ensure that 'discretion was in fact exercised and the basis of that exercise of discretion [is] set forth.' " *Id.*, ¶ 4, citing *McCleary*, 49 Wis. 2d at 277. *See also Gallion*, 270 Wis. 2d 535, ¶ 50.

¶ 21. We conclude that the circuit court here properly exercised its sentencing discretion under the standards set forth in *Gallion*. The court identified the

objectives it sought to achieve with the sentence it imposed: punishing Klubertanz, protecting the public, deterring others, and rehabilitating Klubertanz. It analyzed the specific facts relating to the three primary sentencing factors and all the relevant optional factors in a way that explained why these objectives were all appropriate and why a term of imprisonment, as well as lengthy supervision, was necessary to meet the sentencing objectives. In short, the circuit court explained a rational basis for the "general range" it imposed. *Id.*, ¶ 49.

¶ 22. Klubertanz asserts that *Gallion* requires that the circuit court must explain why it imposed three years of imprisonment. The circuit court did explain why it imposed a term of imprisonment rather than probation, and the term it chose was relatively short. *Gallion* does not require that it explain why it imposed three years as opposed to one or two. S*ee Gallion*, 270 Wis. 2d 535, ¶ 49; *State v. Fisher*, 2005 WI App 175, ¶ 22, 285 Wis. 2d 433, 702 N.W.2d 56.

¶ 23. Klubertanz also asserts that the court did not explain why it imposed a lengthy term of supervision. Again we disagree. The court's comments on the predatory and exploitative nature of Klubertanz's conduct, his threat to the victim, and his lack of acknowledgement that his conduct represented a serious problem rather than a "lapse of judgment" adequately explain the need for a lengthy period of supervision to insure that Klubertanz truly addresses his problem and that the public is protected. Klubertanz points to his employment, his lack of a prior criminal record, and the fact that he was married and had no other allegations of misconduct during the two years between the charging and the trial, during which time he was out on a signature bond. The court did consider these facts, but

in view of the seriousness of Klubertanz's offense and his failure to acknowledge that, the court decided that a lengthy period of supervision was nonetheless required to meet the objectives of protecting the public and rehabilitation.

## II. Unduly Harsh Sentence

¶ 24. Klubertanz argues that the circuit court erred when it concluded that it did not have the authority to modify his sentence on the ground that the sexual assault in prison rendered his sentence unduly harsh. He relies on *State v. Crochiere*, 2004 WI 78, ¶ 11, 273 Wis. 2d 57, 681 N.W.2d 524, *State v. Wuensch*, 69 Wis. 2d 467, 472–73, 479–80, 230 N.W.2d 665 (1975), and *Grindemann*, 255 Wis. 2d 632, ¶ 21, for his assertion that the circuit court did have this authority. In Klubertanz's view, the sexual assault need not meet the test for a "new factor," and he does not argue that it does.[4]

¶ 25. The State disputes Klubertanz's reading of the case law. It argues that the circuit court may consider whether Klubertanz's sentence is unduly harsh based only on factors present at the time the original sentence was imposed. According to the State, the "new factor" test must be used to determine whether the prison assault is grounds for sentence modification, and it does not meet that test.

---

[4] As noted in ¶ 13, in the circuit court Klubertanz explicitly stated that he was not arguing that the sexual assault was a new factor under the case law. On appeal, Klubertanz states in his reply brief: "The State is correct that Klubertanz has framed his request for sentence reduction not as a new factor, but, rather, as part of the trial court's inherent authority to modify a sentence."

¶ 26. The issue of the court's authority to modify a sentence raises a question of law. *See Hayes v. State*, 46 Wis. 2d 93, 99–106, 175 N.W.2d 625 (1970) (implicitly treating as a question of law the scope of a circuit court's authority to modify its sentence).[5] We review questions of law de novo. *See Crochiere*, 273 Wis. 2d 57, ¶ 10.

¶ 27. We begin by summarizing the law on the authority of circuit courts to modify sentences and then address Klubertanz's arguments.

¶ 28. In *Hayes*, 46 Wis. 2d at 101–06, the supreme court relaxed the time limits that existing common law placed on a circuit court's inherent authority to modify a sentence. The court did not address the scope of the inherent authority other than to say: "Of course, the inherent power of the court must be exercised within the limits of sound sentencing discretion and the reasons for the modification should be stated." *Id.* at 106. The court concluded that the circuit court there had properly exercised its discretion in reducing a sentence because the circuit court had not had correct information about the defendant's criminal record. *Id.* at 106–07.

¶ 29. Three years later the court decided it was advisable to establish a standard for circuit courts to apply in exercising their discretionary function of reviewing and modifying sentences. *State v. Foellimi*, 57 Wis. 2d 572, 581, 205 N.W.2d 144 (1973). It rejected an approach under which a circuit court could reduce a sentence based on later reflection that the sentence was too harsh and instead decided to require that in order to reduce the sentence, there must be "new factors" made

---

[5] *Hayes v. State*, 46 Wis. 2d 93, 175 N.W.2d 625 (1970), was overruled on grounds not relevant to this appeal in *State v. Taylor*, 60 Wis. 2d 506, 522–23, 210 N.W.2d 873 (1973).

known to the circuit court. *Id.* at 581–82. A "new factor" was subsequently defined more specifically as "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or . . . was unknowingly overlooked by all of the parties." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). The definition was further refined to add that a new factor is "an event or development which frustrates the purpose of the original sentence." *Crochiere*, 273 Wis. 2d 57, ¶ 14, citing *State v. Champion*, 2002 WI App 267, ¶ 4, 258 Wis. 2d 781, 654 N.W.2d 242.

¶ 30. The court in *Foellimi* made clear that the new factor ground for reducing a sentence was distinct from an argument that a sentence should be reduced because the circuit court erroneously exercised its discretion in sentencing. *Foellimi*, 57 Wis. 2d at 582. The former ground needed to be raised by a motion to the circuit court, and the circuit court would then exercise its discretion whether to reduce the sentence it had imposed because of the new factor; the latter ground, at that time, was raised by an appeal to the supreme court without first filing a motion in the circuit court. *Id.* at 582. The following year the supreme court withdrew its statement in *Foellimi* that a challenge to a sentence as excessive or an erroneous exercise of discretion did not need to be preserved for appeal by first filing a motion in the circuit court. *Korpela v. State*, 63 Wis. 2d 697, 702, 218 N.W.2d 368 (1974). However, this created the anomalous situation that, although a defendant had to first file a motion in circuit court in order to preserve a challenge to a sentence on the ground that it was excessive and an erroneous exercise of discretion, the circuit court was without authority to review its own sentence for an erroneous exercise of discretion. *Wuensch*, 69 Wis. 2d at 479–80.

¶ 31. The supreme court remedied this situation in *Wuensch* by deciding that the circuit court, like a reviewing court, has the authority to review and reduce a sentence it imposed "for [erroneous exercise] of discretion based upon its conclusion the sentence was unduly harsh or unconscionable." *Id.* at 480. The circuit court in *Wuensch* had reduced the defendant's sentence for reasons that the supreme court decided were not new factors. *Id.* at 477–78. However, the supreme court concluded, a circuit court should have the authority to review its own sentence for a possible erroneous exercise of discretion on a claim that the sentence it imposed was unduly harsh or unconscionable even if there is no new factor. *Id.* at 479–80. Although the supreme court expressed doubt that the sentence imposed on that defendant was unduly harsh, it remanded the matter to the circuit court to permit the court to decide whether the sentence it originally imposed was unduly harsh or unconscionable and, if the circuit court decided it was, to explain the reasons. *Id.* at 480.

¶ 32. Our reading of *Hayes, Foellimi, Korpela,* and *Wuensch* leads us to conclude that, in the absence of a new factor, the circuit court has the authority to review a sentence to decide whether it erroneously exercised its discretion by imposing a sentence that is claimed to be unduly harsh, excessive, or unconscionable.[6] The significant point here is that the circuit court's authority to review such claims is the authority to review its own sentence to determine whether it

---

[6] We consider the terms "unduly harsh," "excessive," and "unconscionable" to be equivalent in this context. *See State v. Grindemann,* 2002 WI App 106, ¶ 31, 255 Wis. 2d 632, 648 N.W.2d 507.

properly exercised its discretion in imposing the sentence it did. *See Wuensch*, 69 Wis. 2d at 480; *see also Jones v. State*, 70 Wis. 2d 62, 72–73, 233 N.W.2d 441 (1975) (describing *Wuensch* as "allow[ing] the trial court to review its own sentence for abuse of discretion, i.e., unduly harsh or unconscionable sentences, even if no 'new factors' are present.").

¶ 33. Klubertanz cites *Wuensch* as granting the circuit court the authority to reduce a sentence as long as it does not do so "on mere reflection" or after imposing a sentence for "shock value."[7] According to Klubertanz, apart from those prohibitions, *Wuensch* "recognizes the [circuit] court's power to modify a sentence so long as the court states reasons for the modification," and the circuit court may do so based on a change of circumstances, even if those are not a new factor.

¶ 34. This is not a correct reading of *Wuensch*. As we have already noted, the authority given circuit courts in *Wuensch* is the authority "to review a sentence for [erroneous exercise] of discretion based upon its conclusion the sentence was unduly harsh or unconscionable." *Id.* at 480. Logically, a circuit court does not erroneously exercise its discretion by not taking into

[7] These prohibitions are mentioned in this statement in *State v. Wuensch*, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975):

> The trial court cannot change the sentence upon mere reflection or indulge in "shock treatment." However, we perceive no valid reason why a trial court should not be permitted to review a sentence for [erroneous exercise] of discretion based upon its conclusion the sentence was unduly harsh or unconscionable. If the sentence is to be reduced upon these grounds, the trial court must set forth its reasons why it concludes the sentence originally imposed was unduly harsh or unconscionable.

account circumstances that change after it imposes a sentence. Logically, a review of the circuit court's exercise of its discretion in imposing a sentence is based on a review of what it did in the context of what it knew when it imposed the sentence. It is the function of the "new factor" analysis, with its attendant requirements, to permit modification of a sentence based on information the court did not know at the time it imposed the sentence, whether because the events had not yet occurred or because the information had been overlooked. *Rosado*, 70 Wis. 2d at 288. *See also State v. Doe*, 2005 WI App 68, ¶ 7, 280 Wis. 2d 731, 697 N.W.2d 101 (emphasizing that the new factor may be something that occurs after sentencing).

¶ 35. The "new factor" analysis does not depend upon a circuit court's review of its exercise of discretion in imposing the original sentence for the obvious reason that the circuit court could not have taken into account in sentencing information that it did not have. Rather, a circuit court determines whether a new factor exists as a question of law, and, if it determines there is a new factor, the circuit court then exercises its sentencing discretion, taking the new factor into account, and decides whether the new factor warrants a reduction in the sentence and, if so, what the new sentence should be. *State v. Hegwood*, 113 Wis. 2d 544, 546–47, 335 N.W.2d 399 (1983). There is nothing in *Wuensch* that suggests that reduction of a sentence based on a change in circumstances that does not constitute a new factor is within the circuit court's authority to review its original sentence for an erroneous exercise of discretion.

¶ 36. *Grindemann* does not support Klubertanz's position, either. In *Grindemann*, 255 Wis. 2d 632, ¶ 16,

the circuit court modified Grindemann's sentence several years after it was imposed, based on its conclusion that the original sentence was unduly harsh, and that "possibly" a new factor existed. We reversed the circuit court's modification on procedural grounds, but we also concluded that, as a matter of law, Grindemann was not entitled to a modification. *Id.*, ¶¶ 18, 20. We rejected Grindemann's argument that the sexual abuse he had experienced as a child was a new factor, because the court knew about that at sentencing. *Id.*, ¶¶ 24–25. We then considered whether the sentence was unduly harsh and decided there was no support in the sentencing record for that conclusion. *Id.*, ¶¶ 32–34.

¶ 37. Klubertanz relies on our statement in *Grindemann* that a "circuit court has the 'inherent power' to modify a previously imposed sentence after the sentence has commenced . . . [citing to *Wuensch*]," ¶ 21, and suggests that this inherent power includes the power to modify a sentence because a change in circumstances makes the sentence unduly harsh, even if there is no new factor as defined in the case law. However, a complete reading of *Grindemann* does not sustain this interpretation of the quoted phrase. Our statement on the circuit court's authority to modify a sentence because it is unduly harsh makes clear, as does prior case law, that the circuit court's analysis is confined in that situation to whether it erroneously exercised its discretion in imposing the original sentence:

> When a defendant argues that his or her sentence is excessive or unduly harsh, a court may find an erroneous exercise of discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and

773

violate the judgment of reasonable people concerning what is right and proper under the circumstances."

*Grindemann*, 255 Wis. 2d 632, ¶ 31 (citation omitted). And, as noted above, our review in *Grindemann* of the circuit court's decision to modify the sentence because it was unduly harsh considered the record at sentencing, not circumstances that had changed since then. *Id.*, ¶¶ 32–34.

¶ 38. Finally, Klubertanz's reliance on *Crochiere*, 273 Wis. 2d 57, ¶ 11, is similarly based on statements considered out of context. The defendant in *Crochiere* asked the supreme court to change the new factor jurisprudence because of truth-in-sentencing legislation and to permit circuit courts to consider positive conduct in prison as a new factor. *Id.*, ¶ 1. The court declined to do so and held that the existing "new factor" jurisprudence would continue to apply, under which positive conduct in prison is not a new factor. *Id.*, ¶¶ 15–23.

¶ 39. In setting forth the background of the existing "new factor" jurisprudence, the court in *Crochiere* stated: "The power to modify a sentence is one of the judiciary's inherent powers [citing *Hayes*]" and "[t]his power is exercised to prevent the continuation of unjust sentences." *Id.*, ¶ 11 (citations omitted). Klubertanz argues that these statements support his position that the circuit court here has inherent authority to reduce his sentence because the sexual assault in prison makes his sentence unduly harsh. However, the very next sentence in *Crochiere* is: "However, a circuit court's inherent authority to modify a sentence is a discretionary power that is exercised within defined parameters." *Id.*, ¶ 12. The court then goes on to give examples of the specific ways in which circuit courts have been

authorized to modify sentences, including when a new factor is present or when a sentence is unduly harsh. *Id.* Because the defendant in *Crochiere* was not arguing that his sentence was unduly harsh, the court said no more on that ground for sentence modification but, instead, discussed only the "new factor" ground. *Id.*, ¶¶ 13–26. Thus, *Crochiere* does not expand the scope of a circuit court's authority to decide whether a sentence it imposed was unduly harsh.

¶ 40. We conclude that the circuit court's authority to review its decision to determine whether the sentence it imposed is unduly harsh does not include the authority to reduce a sentence based on events that occurred after sentencing. Rather, in deciding whether a sentence is unduly harsh, the circuit court's inquiry is confined to whether it erroneously exercised its sentencing discretion based on the information it had at the time of sentencing. A circuit court's authority to modify a sentence based on events that occurred after sentencing is defined by "new factor" jurisprudence.

¶ 41. In this case Klubertanz does not argue that the sexual assault that occurred in prison was a new factor as defined in *Crochiere*, 273 Wis. 2d 57, ¶ 14. *See* footnote 4. This implicit concession is appropriate because there is no basis in the record for arguing the sexual assault in prison was highly relevant to the circuit court's sentencing decision or an event or development that frustrates the purpose of the sentence the court imposed. Klubertanz also does not argue that the circuit court erroneously exercised its discretion by imposing a sentence that was unduly harsh. Rather, his argument is that the sentence became unduly harsh later, when he was assaulted in prison. The circuit court

correctly decided that it did not have the authority to modify the sentence because the sexual assault in prison made the sentence unduly harsh.

¶ 42. Our conclusion here is consistent with *State v. Krieger*, 163 Wis. 2d 241, 257–60, 471 N.W.2d 599 (Ct. App. 1991), in which we discussed the relationship between modification of a sentence and conditions in prison that were alleged to make the sentence unduly harsh. In *Krieger*, the defendant argued that the circuit court erred in refusing to review his prison sentence of fifty years for an erroneous exercise of discretion based upon his showing of a statistical probability that, as a sex offender, he would be physically and psychologically abused while in prison in Wisconsin, thus making his sentence unduly harsh. *Id*. at 257–58. We concluded that, while conditions of confinement may constitute cruel and unusual punishment in violation of the Eighth Amendment prohibition, Krieger had not established that the treatment of sex offenders in prison met that standard. *Id*. at 259. More importantly for this appeal, we concluded that, even if Krieger had established a violation of his Eighth Amendment rights, his remedy would be a change in conditions of his confinement, and not a modification of his sentence. *Id*. We observed that "[t]he enforcement of the [E]ighth [A]mendment's prohibition is not accomplished by a sentence modification because that would do nothing to improve the conditions of confinement to insure the physical and mental well-being of the inmates." *Id*. at 260.

¶ 43. We recognize that Klubertanz is not arguing here that the sexual assault rendered his sentence a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Nonetheless, *Krieger* is

776

authority for the proposition that, when a defendant claims that the conditions of confinement have rendered a sentence unduly harsh, the remedy is not modification of the sentence, but, if the requisite standards are met, a change in the prison conditions. Although it is not critical to our analysis, we observe that in this case, Klubertanz's own testimony showed that the prison officials took steps to protect Klubertanz from another assault by his cellmate.[8]

## CONCLUSION

¶ 44. A circuit court's authority to review the sentence it imposed to determine whether it is unduly harsh does not include the authority to reduce a sentence based on events that occur after sentencing. Rather, in deciding whether a sentence is unduly harsh, the circuit court's inquiry is confined to whether it erroneously exercised its sentencing discretion based on the information it had at the time of sentencing. A circuit court's authority to modify a sentence based on events that occur after sentencing is defined by "new factor" jurisprudence. Because the sexual assault in prison is not a new factor under the case law, the circuit court here correctly decided that it did not have the authority to modify the sentence based on the assault.

*By the Court.*—Order affirmed.

¶ 45. DYKMAN, J. (*concurring*). The majority today concludes that under the "unduly harsh and excessive" test, trial courts may not modify sentences because of post-sentencing facts. In *State v. Grindemann,*

---

[8] We also observe that Klubertanz testified that he was preparing to file an action, apparently against the prison officials, seeking damages for the assault.

2002 WI App 106, ¶ 32, 255 Wis. 2d 632, 648 N.W.2d 507, the court concluded that a sentence well within the limits of the maximum penalty will almost never be unduly harsh or unconscionable. Putting today's decision and *Grindemann* together, it is apparent that in reality, there is nothing left of the concept recognized in *State v. Tuttle*, 21 Wis. 2d 147, 151, 124 N.W.2d 9 (1963), that appellate courts have the power to review sentences to determine whether the trial court erroneously exercised its discretion in sentencing. Klubertanz does not contend that his becoming the victim of sexual assault is a new factor. Nonetheless, the majority addresses this issue without briefing, and concludes that becoming a victim of a sexual assault is not a new factor.[1] *See* Majority, ¶ 1 ("Because the sexual assault in prison is not a new factor under the case law, the circuit court correctly decided that it did not have the authority to modify the sentence based on the assault."). I would not address an unbriefed issue. *See e.g., In Interest of Christopher D.*, 191 Wis. 2d 680, 700 n.10, 530 N.W.2d 34 (Ct. App. 1995) ("We generally do not address issues not briefed.").

---

[1] Sentencing review under "new factor" analysis also appears to be severely limited. *See, e.g., State v. Trujillo*, 2005 WI 45, 279 Wis. 2d 712, 694 N.W.2d 933 and *State v. Tucker*, 2005 WI 46, 279 Wis. 2d 697, 694 N.W.2d 926 (trial courts may not consider reduced criminal penalties under Truth-in-Sentencing II (TIS-II) for the same felony sentenced under TIS-I a "new factor" when a defendant moves for sentence modification); *see also* Katherine R. Kruse & Kim E. Patterson, *Wisconsin Sentence Modification: A View from the Trial Court*, 1989 Wis. L. Rev. 441, 447 (noting generally that appellate courts rarely find new factors, observing that Wisconsin Supreme Court had yet to find a new factor in any case since defining the new factor test in *Rosado v. State*, 70 Wis. 2d 280, 234 N.W.2d 69 (1975)).

¶ 46. In *Tuttle*, the court concluded that a $150 fine was excessive and remanded to the trial court to re-sentence Tuttle to a fine that "must fall within the lower portion of the prescribed range." *Tuttle*, 21 Wis. 2d at 153. From that broad start, we are now effectively back to pre-*Tuttle* jurisprudence, in which "an appellate court has no power to review a sentence which is within the limits prescribed for the offense." *Tuttle*, 21 Wis. 2d at 150.

¶ 47. *Grindemann* reduced "harsh or unconscionable" cases essentially to those where the penalty was outside the statutory maximum. We will therefore reverse a trial court's sentence modification, as we did in *Grindemann*, if its modification does not meet this test. The majority's decision divides what is left after *Grindemann* in half, holding that postjudgment facts may never be used to show that a sentence was harsh and unconscionable. The result is that we give trial courts nearly unlimited and practically unreviewable power to set sentences, but those sentences, once set, cannot be changed. We believe in individualized justice, but stop with a judgment of conviction.[2]

¶ 48. Our opinions offer the hope that we are reviewing sentencing decisions. But the majority's opinion and *Grindemann* camouflage the reality that review of sentencing is now akin to hoping that Lucy will finally let Charlie Brown kick the football. There is

[2] Only a handful of Wisconsin appellate cases have reversed a trial court's denial of a motion for sentence modification on grounds that the original sentence was "unduly harsh." *See State v. Reynolds*, 2002 WI App 15, 249 Wis. 2d 798, 643 N.W.2d 165; *State v. Martin*, 100 Wis. 2d 326, 302 N.W.2d 58 (Ct. App. 1981); *State v. Tuttle*, 21 Wis. 2d 147, 124 N.W.2d 9 (1963); *see also State v. Watkins*, 2001 WI App 103, ¶ 35, 244 Wis. 2d 205, 628 N.W.2d 419 (Fine, J., dissenting).

something unsettling about courts offering the appearance of hope where hope does not exist.

¶ 49. A tangible result of these false hopes is that a considerable portion of this court's resources is spent addressing appeals from motions for sentence modification. Precisely how much of our time is spent adjudicating these appeals is unclear. These cases also tax the resources of the public defender, the State and other appellate counsel—all for a sentencing review regime producing within a hair of the same results as one without any review of sentencing.

¶ 50. This court lacks the authority to restore meaningful review of sentencing or to scrap the pretense of meaningful review that currently exists and reverse *Tuttle.* However, either of these options would be preferable to the illusion of review that exists today. I do not know whether it would be better to eliminate review under the "unduly harsh or unconscionable" standard altogether or to give appellate courts real power to review sentencing decisions, but the choice is not mine to make.[3] I therefore conclude that under *Grindemann,* now expanded by the majority's opinion, I must concur in the majority's result.

[3] In egregious cases, appellants may obtain review of sentences under the Eighth Amendment's protection against cruel and unusual punishment and Wis. Stat. § 752.35 (2003–04).