STATE of Wisconsin, Plaintiff-Appellant,

v.

Carl L. DOWDY, Defendant-Respondent.†

Court of Appeals

*No. 2010AP772–CR. Submitted on briefs September 14, 2010.*
*—Decided October 21, 2010.*

2010 WI App 158

(Also reported in 792 N.W.2d 230.)

† Petition for Review granted 3-16-11.

444

447

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bryan J. Cahill* of *Godfrey & Kahn, S.C.*, Madison.

Before Lundsten, Higginbotham and Blanchard, JJ.

¶ 1. BLANCHARD, J. The State appeals from a circuit court order granting Carl Dowdy's request to reduce the period of Dowdy's probation from ten years to seven years. We conclude that the court had neither statutory nor inherent authority to order the reduction. The plain language of Wis. Stat. § 973.09(3)(a) (2007–08)[1] does not authorize the circuit court to reduce Dowdy's probation period. Furthermore, whether or not circuit courts possess inherent authority to reduce a period of probation that is comparable to the inherent authority courts possess to reduce a sen-

---

[1] All references to the Wisconsin Statutes are to the 2007–2008 version unless otherwise noted.

tence, courts have no inherent authority to reduce probation based on a finding of successful rehabilitation. Accordingly, we reverse the appealed order.

## BACKGROUND

¶ 2.  On June 18, 2002, Dowdy was convicted at trial of second-degree sexual assault with use or threat of force or violence. The circuit court sentenced Dowdy to serve fifteen years in prison (seven years' initial confinement, followed by eight years' extended supervision). The court stayed this sentence, and imposed a ten-year period of probation. One condition of probation was one year of confinement in the Milwaukee House of Corrections. Another condition was sex offender evaluation and treatment.

¶ 3.  Seven years later, Dowdy petitioned for "modification" of his period of probation from ten to seven years, citing Wis. Stat. § 973.09(3)(a) as authority. Because Dowdy had completed seven years of probation, granting this request would result in discharging Dowdy from probation. Dowdy asserted that the reduction was appropriate because his progress on supervision had been largely successful, and he no longer could be said to "pose a threat to the community."

¶ 4.  At an evidentiary hearing on the petition, Dowdy presented evidence that he had not contacted the victim in the case while on probation, had completed anger management counseling, maintained employment, and had no addiction or mental health treatment needs. Also at the hearing, three Wisconsin Department of Corrections (DOC) agents who had supervised Dowdy testified to concerns about Dowdy's history on probation. In addition, both the sexual assault victim, through a representative, and the State

objected to the petition. The victim related that she was "very opposed," in part because she believed that the original disposition had been inadequate. The State emphasized that Dowdy had not successfully completed sex offender treatment programming and asserted that he represented "a high risk to reoffend."

¶ 5. At the close of the hearing, the circuit court ordered DOC to conduct a new sex offender risk assessment of Dowdy, with Dowdy's consent, and adjourned the matter for a return of that report and the court's decision on the petition.

¶ 6. Following the first hearing, the State filed an objection to the petition, arguing that the circuit court lacked authority to modify the length of Dowdy's probation. Dowdy filed a response, asserting that under various provisions of Wis. Stat. § 973.09, the court had authority to reduce the probationary period. Dowdy made no claim that the court possessed inherent power to reduce his period of probation.

¶ 7. At a second hearing, the circuit court concluded that it had statutory authority to consider the requested reduction in the probationary period.[2] After hearing further argument from the parties, and considering both the new DOC sex offender risk assessment and a report of a private psychological evaluation submitted by defense counsel, the court found good cause to reduce Dowdy's probation period from the original ten years to seven years upon payment of court-ordered fees. The court made the following findings at the conclusion of the second hearing:

> When I review the evaluation of Mr. Dowdy and the history that he's had with the Department of Correc-

---

[2] The circuit court cited Wis. Stat. § 973.09(2), but we believe this was a mistaken reference to § 973.09(3)(a).

tion[s], I do believe that the biggest problem that Mr. Dowdy has had is, is that he—there is a—at least he's been labeled as a denier, a refusal to accept sort of his role in this situation because in his mind he believes and he's always believed that it was a consensual relationship. However, he has managed to meet just about every condition except the completion of sex offender treatment. He progresses to a certain point and then is terminated and he's done that on several occasions. But given his efforts in terms of all other aspects of probation, this Court does find that there is good cause and it would not violate the public safety to terminate probation.

¶ 8. The State appeals the circuit court's order that the period of probation be "modified" from ten to seven years.

## DISCUSSION

### Interpretation and Application of WIS. STAT. § 973.09(3)(a)

■

¶ 9. Review of the circuit court's decision requires us to interpret and apply WIS. STAT. § 973.09(3)(a). Statutory interpretation is a question of law subject to de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995).

■

¶ 10. When interpreting a statute, we begin with the statutory language. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we ordinarily stop the inquiry and apply that meaning. *Id.* We interpret statutory language "in the context in which it is used; not in isolation but as part

of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (citation omitted).

¶ 11.    Contextual clues to legislative intent "ascertainable from the text and structure of the statute itself, rather than [from] extrinsic sources, such as legislative history," should be used to determine whether the meaning of a statute is plain. *Id.*, ¶¶ 46–48. Courts should consider the potential illumination offered by " 'the words of the provision as they interact with and relate to other provisions in the statute and to other statutes.' " *Beard v. Lee Enterprises, Inc.*, 225 Wis. 2d 1, 10–11, 591 N.W.2d 156 (1999) (citation omitted).

¶ 12.    Three years before his probation period was to be completed, Dowdy asked the court to reduce his probation period to the past seven years, based on his allegedly successful accomplishment of the goals of his probationary period. Dowdy argued, as he does here, that WIS. STAT. § 973.09(3)(a) confers authority on the court to reduce his probation upon a finding of cause. The statute provides:   "Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." The State argues that there is nothing in the language of the statute that authorizes the court to reduce a period of probation. According to the State, the statute plainly authorizes the court only to extend the period of probation, or to

modify the terms and conditions of probation. We agree with the State on this question of statutory interpretation.

¶ 13. Dowdy's argument focuses on the phrase "modify the terms and conditions thereof" in the statute. He argues that this language grants the court the authority to reduce the period of probation. Dowdy's construction of this phrase is unreasonable.

¶ 14. As an initial matter, we note that, unlike the defendant in *State v. McCready*, 2000 WI App 68, 234 Wis. 2d 110, 608 N.W.2d 762, Dowdy did not request that the circuit court terminate his probation and sentence him for the first time. *See State v. Migliorino*, 150 Wis. 2d 513, 541, 442 N.W.2d 36 (1989) (probationer has right at any time to refuse probation, subjecting probationer to sentence instead of continuing terms and conditions of probation).

¶ 15. We also note that DOC, the agency that administers probation and supervises probationers through its Division of Community Corrections, did not request or concur with early termination of Dowdy's probation, another scenario that we do not address in this opinion. *See* 2009 Wis. Act 28, § 3392d (eff. Oct. 1, 2009) (DOC may discharge probationer after completion of one-half of probation period).

¶ 16. We conclude that we do not have cause to refer to legislative history or other extrinsic tools, because the plain language of Wis. Stat. § 973.09(3)(a) does not grant a circuit court the authority to reduce a probation period. Dowdy's argument that § 973.09(3)(a) is ambiguous on this point is incorrect.

¶ 17. It is clear from the terms of Wis. Stat. § 973.09(3)(a) that the legislature did not intend to grant to circuit courts the authority to "modify" probationary dispositions by reducing them in length. In

453

interpreting a statute, we are obligated to seek meaning in every word used by the legislature. *Kalal*, 271 Wis. 2d 633, ¶ 46. In this case, there would be no need to employ the word "extend" as it is used in § 973.09(3)(a) if "modify" meant "extend or reduce," as Dowdy argues.

¶ 18. Instead, courts are authorized under Wis. Stat. § 973.09(3)(a), by order and upon a showing of cause, to "extend probation for a stated period," and, as a separate grant of authority, to "modify" an identified set of terms or conditions of the probation. Neither the word "terms," nor the word "conditions," refers to the length of a probationary period. The word used in § 973.09(3)(a) to refer to the temporal extent of probation is "period," not "terms."

¶ 19. Further evidence is found in the use of the *singular* "period" and the *plural* "terms" in Wis. Stat. § 973.09(3)(a). Section 973.09 uses the singular "term" when referring to the length of probation, *see, e.g.,* § 973.09(2) ("The original term of probation shall be . . . ."), but the plural "terms" to denote words that have fixed meanings (as in the word "terminology"), *see, e.g.,* § 973.09(3)(bm)4. ("If the court does not extend or modify the terms of probation under subd. 3. . . . ."). In contrast, "period" is used consistently to mean span of time, or duration. *See, e.g.,* § 973.09(5) ("When the period of probation for a probationer has expired . . . ."). Drafters were presented with the challenge in § 973.09(4)(a) of defining one time period occurring within another time period, but the language used is still consistent with the above analysis. *See* § 973.09(4)(a) ("The court may also require as a condition of probation that the probationer be confined *during such period* of *the term of probation* as the court prescribes . . . .") (emphasis added). Moreover, the balance of § 973.09(3), after paragraph (3)(a), serves to

confirm this reading. It addresses the mechanics of modifications or extensions that may be required due to unpaid fees or restitution, with no reference of any kind to reductions in probation periods.

¶ 20. As part of his textual analysis, Dowdy points to the legislature's use of the word "modify" in statutes governing the Challenge Incarceration Program and the Wisconsin Substance Abuse Program as explicitly embracing the reduction of a term of incarceration. *See* WIS. STAT. §§ 302.045(3m)(b)1., 302.05(3)(c)2.a. There is no doubt that "modify" is sometimes used to mean to lessen or reduce, as it is used in the statutes that Dowdy cites. Yet the fact that the legislature explicitly used "modify" in this way in these unrelated statutes does not shed light on the particular wording and purposes of WIS. STAT. § 973.09(3). In fact, it would seem to be an equally strong argument that the statutes cited by Dowdy demonstrate the legislature's ability to employ the word "modify" in the sense of "reduction" when that is what the legislature intends, and it decided not to do so here.

¶ 21. In sum, we conclude that WIS. STAT. § 973.09(3)(a) is not "capable of being understood by reasonably well-informed persons in two or more senses," *see Kalal,* 271 Wis. 2d 633, ¶ 47, but instead is unambiguous in granting circuit courts authority to extend, but not to reduce, periods of probation.

*Inherent Authority*

¶ 22. We next address whether the circuit court possessed inherent authority to reduce the probationary period that it originally ordered. Dowdy argues on appeal that circuit courts have inherent authority to reduce imposed periods of probation, just as they have inherent authority to modify imposed sentences, and

455

that the authority in the probation context is even more robust than the authority in the sentencing context. We do not decide today whether courts have this inherent authority as to probation, but conclude that, even assuming the existence of such authority, it could not be invoked in response to a claim of successful rehabilitation, as Dowdy advances here.

¶ 23. The question of the circuit court's inherent authority presents a question of law that we review de novo. *See State v. Klubertanz*, 2006 WI App 71, ¶ 26, 291 Wis. 2d 751, 713 N.W.2d 116.

¶ 24. Wisconsin courts have " 'inherent, implied and incidental powers' " that include those necessary "to fairly administer justice." *State v. Henley*, 2010 WI 97, ¶ 73, 328 Wis. 2d 544, 787 N.W.2d 350 (citations omitted) (circuit court lacked inherent power to order new trial in interest of justice when case not before court under proper procedural mechanism). "A power is inherent when it 'is one without which a court cannot properly function.' " *Id. (quoting State v. Braunsdorf*, 98 Wis. 2d 569, 580, 297 N.W.2d 808 (1980)).

¶ 25. These essential inherent powers include the authority in criminal cases for a circuit court "to change and modify its judgments after the execution of the sentence has commenced." *Hayes v. State*, 46 Wis. 2d 93, 101, 175 N.W.2d 625 (1970), *overruled on other grounds, State v. Taylor*, 60 Wis. 2d 506, 210 N.W.2d 873 (1973).

¶ 26. An important distinction to recognize is that, for many purposes, an order of probation and a sentence are not the same. As this court has summarized the difference:

> [G]enerally probation is not considered a sentence, and the imposition of incarceration as a condition of probation is likewise not a sentence. While "sentence" may also be used in a more general sense, to include probation, it "is a legal term and should be given its legal meaning when used in the statutes and the law unless there are strong indications the term was used in a general sense."

*State v. Fearing*, 2000 WI App 229, ¶ 6, 239 Wis. 2d 105, 619 N.W.2d 115 (quoting *Prue v. State*, 63 Wis. 2d 109, 116, 216 N.W.2d 43 (1974)) (other citations omitted). Courts exercise their discretion to achieve two objectives in staying a sentence and imposing probation:  to rehabilitate the offender and to protect society. *State v. Gray*, 225 Wis. 2d 39, 68, 590 N.W.2d 918 (1999).

¶ 27. A court's inherent authority to modify a sentence is limited. A circuit court's inherent authority "to prevent the continuation of unjust sentences" is well established, but "must be exercised within defined parameters." *State v. Trujillo*, 2005 WI 45, ¶ 10, 279 Wis. 2d 712, 694 N.W.2d 933 (citing *State v. Crochiere*, 2004 WI 78, ¶¶ 11–12, 273 Wis. 2d 57, 681 N.W.2d 524).

¶ 28. Specifically, in *Crochiere,* our supreme court summarized the "defined parameters" within which a circuit court must operate in modifying an imposed sentence in order to give proper deference to the necessity of finality in the imposition of sentences. *Crochiere*, 273 Wis. 2d 57, ¶ 12. The summary includes

three situations in which modification may be considered: (1) a clear mistake was made at sentencing, calling for a correction of a formal or clerical error, or an illegal sentence; (2) a new factor is presented, one that the circuit court could not or did not consider in the original sentencing but now should consider in order to fulfill the purposes of the original sentence; and (3) the sentence is unduly harsh or unconscionable. *Id.*

¶ 29. With that as background, the parties present what appears to be a question of first impression: whether the inherent authority to modify unjust sentences implies a corresponding inherent authority to modify probationary dispositions, which are alternative dispositions to sentencing that have been created by statute.

¶ 30. Dowdy asserts that the inherent sentencing authority addressed in Wisconsin precedent includes inherent authority involving probation decisions. The State acknowledges that the question is previously undecided, but argues that if the courts have similar inherent authority to reduce periods, the courts are constrained in the same way as when they modify sentences. The State further submits that those limitations foreclose a circuit court from relying on its inherent authority based on a finding that the purposes of probation have been satisfied because the probationer has been sufficiently rehabilitated to merit discharge.

¶ 31. We do not decide today whether circuit courts possess inherent authority to reduce probation periods that have already been imposed that is comparable to the well-defined and limited inherent authority courts possess to reduce sentences. We need not do so because we conclude that, even assuming that circuit courts possess this inherent authority, it must be cir-

458

cumscribed in the same way as the inherent authority of courts to modify sentences already imposed. The theoretical inherent authority to prevent the continuation of an inappropriate probation period is logically subject to the same limitations as the established inherent authority to prevent the continuation of inappropriate sentences.

■

¶ 32. The limitations on sentence modification are premised on a policy favoring finality in sentencing. *See State v. Wuensch*, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975) ("there must be some finality to the imposition of [a] sentence"). This preference for finality logically applies to sentencing in the general sense, including its probationary component. Given the importance of finality of sentences emphasized in such cases as *Wuensch*, unfettered authority to reduce probation periods is unlikely to be an authority "without which a court cannot properly function," as an inherent power must be under *Henley*, 787 N.W.2d 350, ¶ 73.

¶ 33. Our only guidance in discerning the potential scope of inherent judicial authority in the probation area comes from precedent defining the inherent powers to modify sentences. Dowdy fails to cite any authority in direct support of his assertion that the limitations that apply to the inherent judicial authority to modify sentences should not also apply to an inherent judicial authority to reduce a probation period. We see no reason that the same limitations should not apply when the legislature has not provided a "for cause" statutory basis for judicial authority to reduce a probation period. Put differently, Dowdy has not provided sufficient reason for us to conclude that Wis. Stat. § 973.09(3)(a) impermissibly infringes on a judicial power. *Cf. Joni B. v. State*, 202 Wis. 2d 1, 8, 549 N.W.2d 411 (1996)

(violation of separation of powers for legislature to prohibit courts from appointing counsel for any person other than child in CHIPS proceedings).

¶ 34. We now address the "defined parameters" summarized in *Crochiere* in the context of this case. The first of these defined parameters, mistake or illegality, does not apply. Dowdy does not argue that his probation period was ordered by mistake, or that it was illegal when ordered.

¶ 35. The second parameter, identification of a "new factor," is the ground on which Dowdy based his motion. It also does not apply because a claim of rehabilitation sufficient to obviate public protection concerns does not qualify as a "new factor." *See State v. Kaster*, 148 Wis. 2d 789, 804, 436 N.W.2d 891 (Ct. App. 1989) ("Post-sentence conduct is not a new factor for sentence modification purposes."). As the supreme court noted in *State v. Kluck*, 210 Wis. 2d 1, 7–11, 563 N.W.2d 468 (1997), circuit courts have numerous tools to recognize and reward rehabilitation, such as modification of probation conditions and the granting of Huber work-release privileges for probationers serving jail time as a condition of probation, but sentencing modification is not among them.

¶ 36. Finally, the third factor also does not apply because Dowdy has not suggested that it was "unduly harsh or unconscionable" for the circuit court to stay a fifteen-year prison sentence, and instead impose a period of ten years' probation, for Dowdy's criminal conduct, which was forcible penis-to-vagina intercourse.

¶ 37. Having concluded that the circuit court lacked either statutory authority or, at least as to claims advanced by the probationer in this case, inherent

460

authority to order the period of probation reduced, we do not reach the parties' additional arguments.

## CONCLUSION

¶ 38.   For the reasons discussed above, we reverse the appealed order and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.